805 So.2d 690 (2001)
JEFFERSON COUNTY and Birmingham-Jefferson Civic Center Authority
v.
Jason RICHARDS et al.
Jefferson County
v.
Phillip A. Triantos, M.D.
Jason Richards and Jeffrey Terrell
v.
Phillip A. Triantos, M.D.
Phillip A. Triantos, on behalf of himself and a certified class of persons
v.
Jefferson County, Alabama.
1981680, 1990836, 1990923 and 1990961.
Supreme Court of Alabama.
June 22, 2001.
*693 William M. Slaughter, J. Vernon Patrick, Jr., Matthew T. Franklin, and Jeffrey V. Havercroft of Haskell, Slaughter & Young, L.L.C., Birmingham; and Edwin A. Strickland, Jeffrey M. Sewell, and Charles S. Wagner, Jefferson County's Attorney's Office, Birmingham, for Jefferson County.
E. Clayton Lowe, Jr., Peter A. Grammas, and Wilson F. Green of Burr & Forman, L.L.P., Birmingham, for Phillip A. Triantos, M.D., and the exempted class.
William J. Baxley, Joel E. Dillard, Charles A. Dauphin, and David McKnight of Baxley, Dillard, Dauphin & McKnight, Birmingham, for Jason Richards and the taxpayers.
PER CURIAM.
These appeals arise from, or are related to, a class action filed against Jefferson County by certain county taxpayers, referred to herein as the Richards class. The Richards class members claim that an occupational tax, as currently authorized by Ala. Acts 1967, Act No. 406 (Reg.Session) (not codified), and implemented by Jefferson County Ordinance No. 1120, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The equal-protection claim asserted by the Richards class stems from the fact that another group of taxpayers, referred to herein as the Triantos class, or the "exempt" class, are exempt from payment of the tax, under the mandate of Act No. 406 and under the express language of Ordinance No. 1120.
The overarching issue presented in this group of appeals is whether the Equal Protection Clause of the Fourteenth Amendment mandates that all professions and occupations be treated the same by the State of Alabama and by Jefferson County for occupational-tax purposes. Stated more specifically, the primary issue presented is whether the exemptions from Jefferson County's occupational tax, granted to certain professions and occupations by Act 406 and implemented by Ordinance No. 1120, violate the Equal Protection Clause. We hold that the Richards plaintiffs have failed to meet their burden of *694 proving that the exempt classifications at issue violate the Equal Protection Clause.

Case No. 1981680
The plaintiff class in Richards v. Jefferson County et al. (Case No. 1981680), filed their action in 1992, seeking a judgment declaring Jefferson County's occupational tax unconstitutional. Judge John E. Rochester entered a judgment on November 12, 1998, holding that the exemptions required by § 4 of Act 406 and allowed by Section 1(B) of Ordinance No. 1120 violate the Equal Protection Clause. On June 17, 1999, Judge Rochester entered an order enjoining the County from continuing to collect the occupational tax from the members of the Richards class unless it also collected the tax from the members of the Triantos class. Pursuant to that order, Jefferson County began collecting the tax from the Triantos class members; also pursuant to Judge Rochester's order, the County placed those newly collected funds in a special escrow account. Jefferson County appeals from Judge Rochester's order of June 17, 1999.

Case No. 1990836
Case No. 1990836, an appeal styled Jefferson County v. Phillip Triantos, M.D., arises out of a class action filed by a Birmingham physician, Dr. Phillip Triantos, against Jefferson County after the County had begun collecting the occupational tax from the exempt taxpayers. Triantos sought a judgment declaring that Jefferson County had no authority to impose the occupational tax on the exempt taxpayers and an injunction prohibiting Jefferson County from collecting the occupational tax from the exempt taxpayers; he also sought a refund of all occupational taxes that had been collected from the exempt taxpayers.[1] Judge Thomas Woodall (who is now a Justice on this Court) heard the action and issued the requested declaratory judgment and the requested injunction, finding no lawful basis under which the County could impose the occupational tax on the members of the Triantos class because the 1967 Act conferred no such taxing authority on Jefferson County. Jefferson County appeals from the injunction.[2]
Jefferson County filed a "Motion to Alter, Amend or Stay," seeking a stay of Judge Woodall's injunction pending an appeal. Although Judge Woodall denied the motion, this Court, on March 22, 2000, granted the stay. By virtue of this stay, Jefferson County continues to collect the occupational tax from both the Richards class and the Triantos class of taxpayers.

Case No. 1990923
Case No. 1990923 arises out of a motion to intervene filed by the Richards plaintiffs in the Triantos action. The Richards *695 plaintiffs sought to intervene in order to have the 1967 Act and the Ordinance declared unconstitutional, a position contrary to that being asserted by the exempt taxpayers in the Triantos action. Judge Woodall denied this motion, and the Richards plaintiffs appeal.

Case No. 1990961
Case No. 1990961 arises from Judge Woodall's order in the Triantos action denying Dr. Triantos's request for a refund of all occupational taxes paid by the members of the exempt class. Judge Woodall deferred any ruling on the refund issue pending further orders in the Richards action regarding the escrow account in which the taxes collected from the exempt taxpayers were deposited. Triantos filed a "Motion to Alter or Amend," arguing that the Richards court lacked jurisdiction over the Triantos class and that the Triantos class should not be compelled to seek their refund in the Richards action. Judge Woodall denied this motion; Triantos appeals.

Issues Presented On Appeal
We consider the following issues on appeal:
1. Whether Judge Rochester's order issued in Richards v. Jefferson County is an appealable order.
2. If the order entered by Judge Rochester in Richards et al. v. Jefferson County is an appealable order, what is the appropriate standard of review to be applied in that appeal?
3. Whether the exemptions mandated in Act 406 (1967) and allowed in Ordinance No. 1120 are unconstitutional as violating the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.
4. If this Court determines the exemptions mandated in Act 406 (1967) and authorized by Ordinance No. 1120 to be constitutional, whether Judge Woodall's order entered in Triantos v. Jefferson County, in which he enjoined Jefferson County's collection of the occupational tax from the exempt group of taxpayers, should be affirmed and whether this Court's stay of Judge Woodall's order should be lifted.
5. Whether the Richards class members were entitled to intervene, either as a matter of right or permissively, in the Triantos v. Jefferson County action.
6. If Jefferson County's collection of the occupational tax from the Triantos class is unconstitutional, what is the appropriate remedy?

Discussion
We summarily dispose of issues 1, 2, and 5. As for the first issue, it cannot be seriously disputed that Judge Rochester's order of June 17, 1999, in which he restrained Jefferson County from collecting an occupational tax from the Richards class members unless it also collected the tax from the Triantos class members, is an appealable order. As correctly argued by Jefferson County, Judge Rochester's order is both a mandatory injunction[3] and a prohibitory injunction.[4] Rule 4(a)(1)(A) of the Alabama Rules of Appellate Procedure authorizes an appeal from an "interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction." *696 Judge Rochester's June 17, 1999, order is appealable.
We next determine the appropriate standard of appellate review to be applied to Judge Rochester's ruling that the exemptions at issue in this case violate the Equal Protection Clause. Jefferson County asserts that the proper review is a de novo review, with no presumption of correctness, because this appeal raises a federal constitutional issue and because any findings of fact made by Judge Rochester are intimately intertwined with that constitutional issue. The Richards plaintiffs argue that the "clearly-erroneous" standard is the applicable standard because Judge Rochester made findings of fact based on evidence presented to him ore tenus. The Richards plaintiffs assert that, on appeal from a trial court's determination that a statute or ordinance violates the Equal Protection Clause, an appellate court must apply the "facts" as determined by that trial court.
Alternatively, Jefferson County asserts that, even if the clearly-erroneous standard is the proper standard to be applied, Judge Rochester applied erroneous legal principles in his orders. The Richards plaintiffs argue that Judge Rochester correctly applied the law to the findings of fact contained in his order.
Judge Rochester's November 12, 1998, order states, in pertinent part:
"The Court has considered the evidence, argument, and pleadings in this matter, along with the applicable statutes, ordinance and case law. After a consideration of same, the Court finds that Section 4 of Alabama Act 406 (1967) and Section 1(B) of Jefferson County Ordinance 1120 (1987) are unconstitutionally violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, for the following reasons:
"1) Fairness is the notion underlying the concept of equal protection, and, as such, fairness must be examined when considering how a government treats its citizens. The unfair application of the County's occupational tax violates the rights of wage earners and certain select professionals by unfairly subjecting them to an employment tax while allowing other occupations to be exempt from the tax by paying a nominal yearly license fee.
"2) The ordinance and statute in question each contain vague definitions which lead to subjective interpretations and inconsistent enforcement of the tax.
"3) Many taxpayers pay a license fee and also pay an occupational tax, which is in direct conflict with Act 406.
"4) The exemptions established by the statute and ordinance unjustly and unreasonably create a class of taxpayers who must bear the sole burden of providing occupational tax dollars for the County.
"5) The exemptions are arbitrary, unfair and irrational.
It is significant to note that no real dispute exists regarding the underlying facts. The parties do not dispute the validity of the Act or the Ordinance, other than as to the constitutionality of the exemptions found therein. Nor is the evidence that was presented to Judge Rochester of the type that is subject to serious factual debate. The evidence presented to Judge Rochester included testimony from various Jefferson County taxpayers as to their professional or vocational status, their tax status, and whether they believed that tax status to be fair or unfair; the testimony of an academician (who formerly served as the assistant director of finance) regarding the legislative foundation of Act 406; the testimony of various former county *697 officials as to their understanding of the background of Ordinance No. 1120; and testimony from current Jefferson County officials regarding Jefferson County's tax-collection efforts.
Further, the only findings of fact made by Judge Rochester addressed the ultimate constitutional issue presented for decision whether the exempt classifications mandated by Act 406 and authorized by Ordinance No. 1120 are so unreasonable, arbitrary, and capricious as to violate the Equal Protection Clause. We find the observations of the United States Court of Appeals for the First Circuit, in Fortin v. Darlington Little League, Inc., 514 F.2d 344 (1st Cir.1975), another case involving an equal-protection challenge, to be directly on point:
"The parties were evidently of the opinion that the district court's assessment of the relevant physical differences between boys and girls, as well as its conclusion that these differences provided `rational' support for Darlington's exclusion of girls, were findings of fact within the meaning of Fed.R.Civ.P. 52(a). It was argued that if there is substantial evidence in the record supporting them, we must affirm. However, assessing such matters is not like reviewing a judgment in a personal injury case. The facts themselves, sometimes labelled `legislative' or `constitutional' facts, are not `provable' in the usual sense and are part and parcel of the constitutional judgment we ourselves must make. Cf. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (quoting Watts v. Indiana, 338 U.S. 49, 51, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949)); Note, The Presentation of Facts Underlying the Constitutionality of Statutes, 49 Harv. L.Rev. 631, 638-39 (1936)."
514 F.2d at 348-49. See also Brasslett v. Cota, 761 F.2d 827 (1st Cir.1985) (recognizing that an appellate court reviewing a constitutional issue is not bound by clearly-erroneous standard of review and must conduct an independent review of facts); Pinnell v. Board of County Comm'rs, 127 N.M. 452, 982 P.2d 503 (N.M.Ct.App.1999) (reviewing equal-protection challenge of county resolution under de novo standard); People v. Pitts, 222 Mich.App. 260, 564 N.W.2d 93 (1997) (reviewing equal-protection challenge of statute under de novo standard).
As did the First Circuit Court of Appeals in Fortin, supra, we conclude that any factual issues presented for resolution are "part and parcel of the constitutional judgment we ourselves must make." Id. at 348-49. Because it is the duty of this Court to resolve the constitutional issues presented to it, and any factual questions presented are "part and parcel" of the constitutional issues, we review all issues de novo. Additionally, because we conclude that our review of Judge Rochester's ruling is a de novo one, we need not address, at this point in the opinion, the issue whether Judge Rochester applied erroneous legal principles in his order.
As for the fifth issue, we hold that the procedural posture of these appeals renders moot the appeal by the Richards class from the denial of its motions to intervene in the Triantos action. As stated above, we review the constitutional issues under a de novo standard, giving no presumption of correctness to the findings of fact made by Judge Woodall. In addition, we note that all parties with an interest in these actions are now before this Court or were allowed an opportunity to appear before it. The taxpayers that are expressly subject to the occupational tax (the Richards class), the taxpayers that are expressly exempt from the occupational *698 tax (the Triantos class), and the taxing authority (Jefferson County), have presented to this Court their arguments, both orally and in briefs, on the issues raised in each of the four appeals. As a result, the Richards class members have not suffered, and will not suffer, any prejudice from the denial of their motions to intervene in the Triantos action. We express no opinion on the merits of those motions; we simply find that the procedural posture of these appeals makes it unnecessary for us to consider those motions.
We now turn to the substantive issues. The central issue presented in this group of appeals is whether the Fourteenth Amendment to the Constitution of the United States mandates that all professions and occupations be treated the same by Jefferson County for tax purposes. The specific issue presented is whether the exemptions from Jefferson County's occupational tax, granted to certain professions and occupations by Act 406 and by Ordinance No. 1120, violate the Equal Protection Clause of the Fourteenth Amendment.
The Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court has addressed the constraints placed on the judiciary in reviewing an equal-protection challenge of this nature. In Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the Court stated:
"The Equal Protection Clause directs that `all persons similarly circumstanced shall be treated alike.' F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 [40 S.Ct. 560, 64 L.Ed. 989] (1920). But so too, `[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' Tigner v. Texas, 310 U.S. 141, 147 [60 S.Ct. 879, 84 L.Ed. 1124] (1940). The initial discretion to determine what is `different' and what is `the same' resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose."
Having noted these guiding principles, we return to the constitutional issue before us with a sharper focus of the proper inquiry: Whether Jefferson County's classification of professions and occupations into different taxation categories bears some fair relationship to a legitimate public purpose. If the challenged classification bears a fair or rational relationship to a legitimate or proper public purpose, then our inquiry into the constitutional issue presented in these appeals need go no further.

Background of Act No. 406, Ala. Acts 1967 (Reg.Sess.), and Ordinance No. 1120
The Legislature enacted Act No. 406 in 1967 with the stated purpose of "equaliz[ing] the burden of taxation by authorizing the county to impose a license or privilege tax upon persons now engaging in certain businesses without paying any license tax thereon to either the state or county." Act No. 406, § 3. That Act authorized, but did not require, counties with populations greater than 500,000 to do the following:
"[T]o levy a license or privilege tax upon any person for engaging in any business for which he is not required by law to pay any license or privilege tax to either *699 the State of Alabama or the county by any of the following Article 1, Chapter 20, Title 51; Sections 176, 177, 178, 180, 182, 183, 184, 186, 429, and 826 in Title 51 of the Code of Alabama of 1940 as amended."
Article 1, Chapter 20, Title 51, as amended, refers to the general licensing fees imposed by the State of Alabama upon certain businesses and professions; Sections 176, 177, 178, 180, 182, 183, 184, and 186 in Title 51 of the Code of Alabama of 1940, as amended, refer to the license taxes imposed by the State of Alabama upon public utilities operating within the State of Alabama; Section 429 in Title 51 of the Code of Alabama of 1940, as amended, refers to the excise taxes imposed by the State of Alabama upon financial institutions; and Section 826 in Title 51 of the Code of Alabama of 1940, as amended (now repealed), refers to the fees and taxes imposed by the State of Alabama upon insurers. Thus, in summary, Act 406 authorizes, but does not require, a qualifying county to impose a license tax upon any person engaged in a business but not already paying a license tax to the State or County under the specified Code sections.
In 1968, Jefferson County exercised the taxing authority granted to it by Act 406 by enacting a General Licensing Code. In 1987, Jefferson County again exercised this taxing authority by enacting Ordinance No. 1120, which imposed an "occupational license tax" (referred to herein simply as an "occupational tax"), in the amount of one-half percent (½%) of the gross receipts earned within Jefferson County by every person engaged in a "vocation, occupation, calling or profession," as defined in the Ordinance. The words "vocation, occupation, calling or profession" were defined in the Ordinance as follows:
"(B) The words `vocation, occupation, calling and profession' shall mean and include the doing of any kind of work, the rendering of any kind of personal services, or the holding of any kind of position or job within Jefferson County, Alabama, by any clerk, laborer, tradesman, manager, official or other employee, including any non-resident of Jefferson County who is employed by any employer as defined in this section, where the relationship between the individual performing the services and the person for whom such services are rendered is, as to those services, the legal relationship of employer and employee, including also a partner of a firm or an officer of a firm or corporation, if such partner or officer receives a salary for his personal services rendered in the business of such firm or corporation, but they shall not mean or include domestic servants employed in private homes and shall not include businesses, professions or occupations for which license fees are required to be paid under any General License Code of the County or to the State of Alabama or the County by any of the following: Chapter 12, Article 2, Title 40; §§ 40-21-50, 40-21-52, 53, 54 and 55; 40-21-57, 58, 59, and 60; 40-16-6; and 27-4-9 of the Code of Ala. 1975, as amended."
(Emphasis added.) The Code sections referenced in Ordinance No. 1120 are the corresponding Code sections referred to in Act No. 406, as renumbered upon their transfer from the 1940 Code to the 1975 Code. Thus, under the express language of the Jefferson County Ordinance, the occupational tax applies to every person working within the County, with the exception of those persons engaged in professions or occupations for which license fees are required to be paid under any of the Code sections set forth in the Ordinance, which *700 are the same Code sections set forth in Act 406.
However, these are not the only persons exempt from payment of the occupational tax. Jefferson County interprets Ordinance No. 1120 to exempt the following classes of persons from payment of the occupational tax under Ordinance No. 1120: (i) individuals engaged in certain professions and occupations who are required to pay state license fees and are expressly protected by state law from county taxation; (ii) individuals who do business as sole proprietorships and pay taxes to the County under its general business-license code; (iii) individuals who do business as sole proprietors and pay taxes under the state license code, which in most instances includes a piggyback tax to the County; (iv) persons employed as domestic workers in private homes; and (v) persons employed as ordained ministers.

Case No. 1981680
The Richards class contends that the Jefferson County Ordinance
"clearly frustrated its very purpose, and did so [in] seven separate ways, because it:
"1) Assembles a comical, ridiculous hodgepodge of exempted callings which is so absurd that it violates the United States Constitution's Equal Protection rationality test on its face...;
"2) Imposes percentage rates of taxation on non-exempt wage earners which are substantially and irrationally greater than comparatively paltry license fees paid by high income, licensed `professionals' who are exempt from paying the tax;
"3) Grants `preachers,' who are not exempted from the tax, exemption nevertheless, and then on a case-by-case basis arbitrarily and irrationally picks and chooses exemption status for some, but not all, preachers;
"4) Selects businesses rather than individuals for tax exemption in a manner which irrationally allows sole proprietors exemption from the tax while their otherwise identical counterparts pay it;
"5) Through error or oversight simply fails, irrationally, to include within the exempted class a broad array of state regulated `professionals' licensed under Title 34 of the State Codeincluding, among others, nurses, real estate appraisers, dieticians, podiatrists, and any [sic] others;
"6) Arbitrarily and irrationally omits from the exemption list non-licensed professions which nevertheless adhere to training and certification standards and fees equal to or greater than those exempted, including teachers and police officers;
"and
"7) Irrationally equates license fees which are paid exclusively to the State, thereby conferring no benefit whatsoever upon the County, with payments to Jefferson County."
However, we find no merit in these arguments to invalidate Ordinance No. 1120 or Act No. 406 on equal-protection grounds. As addressed below, we conclude that the exempt classifications created by Act No. 406 and by Ordinance No. 1120 bear a fair relationship to a legitimate public purpose.
It has long been recognized that the legislature has the authority to create classifications for legislative purposes.
"No question is or could be made ... as to the right of a state, or a municipality with properly delegated powers, to enact laws or ordinances, based on reasonable classification of the objects of the legislation *701 or of the persons whom it affects. `Equal protection' does not prohibit this. Although the wide discretion as to classification retained by a legislature, often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. Indeed, it has long been the law under the 14th Amendment that `a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it....' `The rule of equality permits many practical inequalities.' `What satisfies this equality has not been and probably never can be precisely defined.'
"The power to make distinctions exists with full vigor in the field of taxation, where no `iron rule' of equality has ever been enforced upon the states. A state may exercise a wide discretion in selecting the subjects of taxation `particularly as respects occupation taxes.'"
New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 578-79, 58 S.Ct. 721, 82 L.Ed. 1024 (1938) (citations omitted).
Time and time again, this Court has embraced these very principles in addressing constitutional challenges to state and local legislative action. For example, in State ex rel. Attorney General v. Spann, 270 Ala. 396, 118 So.2d 740 (1959), this Court upheld a statute requiring the licensing of architects, stating:
"We believe that it is within the discretion of the legislature to determine at what point licensing is to begin and at what point it shall end....
". . . .
"We cannot say that we know all the reasons for the classifications under the act in question. This is not necessary however. It is within the scope of legislative authority to make classifications in its regulatory enactments. Unless clearly and patently arbitrary, oppressive and capricious on its face, such classification is not subject to judicial review. Mere inequality under such classification is not sufficient to invalidate a statute."
270 Ala. at 400, 118 So.2d at 743.
Again, in Jolly v. City of Birmingham, 55 Ala.App. 603, 318 So.2d 300 (1975), the Court of Civil Appeals upheld a municipal ordinance that imposed an occupational license tax. In so holding, it recognized:
"[I]t is only blatantly arbitrary and unreasonable classifications which will sustain [an equal-protection] claim for taxation purposes....
". . . .
"... [I]nconsistent enforcement of an ordinance constitutes no argument against the power to pass it.
"Appellant urges that a discriminatory condition is created by the fact the occupational tax imposes a greater burden upon those subject to it than upon those subject to other taxes. However, various taxes inherently impose varying burdens. So long as all within the class subject to the particular tax are treated equally, there can be no complaint."
55 Ala.App. at 607-08, 318 So.2d at 304 (citation omitted).
More recently, in City of Prattville v. Welch, 681 So.2d 1050 (Ala. 1996), this Court addressed an equal-protection challenge asserted by a private liquor licensee to a municipal tax applicable to private liquor retailers but not to state-owned stores. In upholding Prattville's municipal ordinance, this Court, quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359-60, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), stated:
"`The Equal Protection Clause does not mean that a State may not draw *702 lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. Harper v. Virginia Board of Elections, 383 U.S. 663, 666, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 [ (1966) ]. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' As stated in Allied Stores of Ohio v. Bowers, 358 U.S. 522, 526-27, 79 S.Ct. 437, 440-441, 3 L.Ed.2d 480 [ (1959) ]:
`"`The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value."'"
681 So.2d at 1052-53. In reversing the trial court's ruling that the Prattville municipal ordinance was unconstitutional, this Court stated: "[T]he trial court failed to take into consideration long-standing United States Supreme Court jurisprudence establishing a deferential rationality standard for reviewing state economic (tax) legislation under the Fourteenth Amendment. Under this standard, great deference is given to a state's classification of individuals or entities for tax purposes." Id. at 1052.
Finally, we note that in the seminal case of Estes v. City of Gadsden, 266 Ala. 166, 94 So.2d 744 (1957), this Court upheld against an equal-protection challenge a substantially similar occupational tax levied by the City of Gadsden. The Estes Court stated:
"It is seriously argued that the instant tax is in classification unreasonable, capricious and discriminatory. In the case of Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 406, 110 A.L.R. 1479 [(1937)], this court said:
"`As stated for this court in Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25 [ (1937) ], the only limitation imposed upon the Legislature is that when it proceeds to impose a tax on occupations or privileges, it must be equal and uniform. The equality and uniformity [consist] in the imposition of the like tax upon all who engage in the vocation, or who may exercise the privilege taxed....'
"It has been oftentimes stated that classification under the constitution is necessarily elastic, except that it should be made according to reasonable, just and practicable rules. If the selection is neither capricious nor arbitrary and rests upon some reasonable consideration of difference or policy as between the various groups and individuals taxed in the city, the courts have held that the classification is proper and that there is no denial of the equal protection of the *703 law. Equal protection is satisfied when all persons of the same class fairly made are subject to the same amount and terms of such tax laws.
". . . .
"`... "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."'"
Estes, 266 Ala. 166, 173, 94 So.2d at 750-51 (citations omitted).
Applying these constitutional principles, the Estes Court upheld the municipal ordinance, finding sufficient distinctions between self-employed persons working in a profession and persons working as salaried, wage-earning employees in that same profession to justify a separate classification for purposes of the occupational-tax scheme. Id. at 173-74, 94 So.2d at 751. Thus, the Estes Court rejected the taxpayers' claims that the ordinance violated the Equal Protection Clause because of arbitrary and unreasonable classifications.
The Estes Court also rejected the taxpayers' claims of discrimination based upon an alleged additional tax burden placed upon independent contractors and certain other business forms as a result of the prior adopted general-license schedule of the city. The Estes Court noted:
"Doubtless there may be inequalities but our courts are committed to the proposition, as stated by the Supreme Court of the United States in Lawrence v. State Tax Commission, 286 U.S. 276, 284, 52 S.Ct. 556, 559, 76 L.Ed. 1102 [ (1932) ], as follows:
"`The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions.'"
Estes, 266 Ala. at 174, 94 So.2d at 751.
Additionally, the Estes Court rejected the taxpayers' claim that the amount of the tax levied (1%) was so burdensome as to be unconstitutional, recognizing that "the extent of the burden is a matter for the discretion of the lawmakers, unless the act is so arbitrary as not to be an exercise of the taxing power at all, the form of the tax being a cloak for something else." Id., citing Bessemer Theatres v. City of Bessemer, 261 Ala. 632, 75 So.2d 651 (1954).
Further, notwithstanding the fact that persons employed as domestic workers in private homes and ministers of recognized religious bodies were exempted, the Estes Court found, between those occupations and other occupations, substantial differences that justified those exemptions. Estes, supra, at 173, 94 So.2d at 750. See also McPheeter v. City of Auburn, 288 Ala. 286, 259 So.2d 833 (1972) (relying upon Estes to uphold Auburn's ordinance imposing an occupational tax, which also exempted domestic workers and ministers). Because the Estes Court found that the classifications created by the Gadsden ordinance rested upon some reasonable consideration *704 of difference or policy and because all persons of the same class were subject to the same tax, the requirement of equal protection was satisfied.
After carefully reviewing the record and the briefs, as well as studiously considering the oral arguments presented to this Court, we conclude that the exemptions mandated in Act 406 and allowed in Ordinance No. 1120 do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. As the Estes Court held regarding the classifications at issue in that case, we conclude that the exempt classifications created by Act 406 and by Ordinance No. 1120 rest upon a reasonable consideration of difference or policy between the various groups and individuals. We also hold that the classifications created by Act 406 and Ordinance No. 1120 bear a fair relationship to a legitimate public purpose. For these reasons, the requirement of equal protection is satisfied.
First, we find the exemptions provided in Ordinance No. 1120 for persons engaged in professions and occupations, who are required to pay state license fees and who are expressly protected by state law from further imposition of license taxes, to be fairly and reasonably related to a legitimate governmental purpose. Although we do not profess to understand the Legislature's reasons for creating the scheme of state-licensing requirements now in existence, we are not required to understand and accept its panoply of reasons for the taxation schemes it is authorized to enact. See State ex rel. Attorney General v. Spann, supra. We simply conclude that, as Jefferson County argued, the prohibition found in Act 406 against further taxation of persons engaged in professions and occupations subject to the state-licensing requirements furthers several possible legitimate governmental purposes. These governmental purposes may be those of economic development, statewide uniformity, or the protection of a future source of tax revenue. Any one of these purposes, or all of them, could serve as the rational and legitimate basis of the exempt classifications created by Act 406 (and adopted by legislative mandate in Ordinance No. 1120), which prohibits further taxation of persons engaged in the specified professions and occupations. Because we conclude that a fair and rational basis supports the challenged classification, we conclude that the Richards class has not met its burden of negating any conceivable set of facts that would support this challenged classification. See Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (plaintiff's burden of proof in challenging the constitutionality of an ordinance is to negate "every conceivable or reasonable basis which might support the [challenged] classification").
The second and third class of individuals considered exempt under Ordinance No. 1120 are those who do business as sole proprietors and who pay taxes to the County under its general business-license code and those individuals who do business as sole proprietors and pay taxes under the state license code, which in most instances includes a piggyback tax to the County. The Richards class contends that these classifications allow those individuals doing business as sole proprietors an arbitrary and unreasonable exemption from the occupational tax, while their otherwise identical counterparts pay the occupational tax.
We reject this argument. This Court wrote in Estes:
"[S]ome plumbers or architects or accountants are self employed and offer their services to the general public. Others do not do this but hire out to a specific employer. Does the fact that *705 there may be some plumbers, architects, accountants, who fall in the first group of self employed persons, and some architects, accountants or plumbers who fall in the second group, mean there is no substantial distinction which makes the one class different from the other? The fact that the employee group is salaried or wage-earning, whereas the other group is not, would provide the substantial distinction which makes the one class different from the others and brings within the influence all who are under those same salary or wage earning conditions and applies equally to all in the class at the rate of one percent. Furthermore, we see no reason why, for example, plumbers, architects, or accountants must each be put in a separate class, because of a difference in the nature of their respective work. Each can, of course, be put into a separate classification and if so, why can they not be put in the same class if they are all paid by an employer and draw their pay in the City of Gadsden?"
Estes, 266 Ala. at 173-74, 94 So.2d at 751 (citations omitted). We agree with the rationale stated in Estes and conclude that the separate classification of individuals who do business as sole proprietors and buy business licenses pursuant to the County's general licensing code or the State License Code is fairly related to a legitimate governmental purpose. Exempting a self-employed individual from payment of an occupational tax, a tax being levied on the privilege of earning money in the role of an employee, certainly cannot be deemed irrational. Additionally, avoiding double taxation on a self-employed individual, who is required to pay the business-license tax as well as the expenses associated with running a business, furthers a potential governmental purpose of encouraging the survival of small business. We conclude that the exemption recognized for individuals who do business as sole proprietors and who pay a business-license tax pursuant to the County's general licensing code or pursuant to the state licensing code does not violate the Equal Protection Clause. Estes, supra.
The Richards class also challenges the exempt classifications allowed by Ordinance No. 1120 for persons employed as domestic workers in private homes and persons employed as ordained ministers. We need not engage in an extensive analysis of the constitutionality of these classifications, because this Court expressly recognized them to be valid in Estes, supra, and again in McPheeter v. City of Auburn, 288 Ala. 286, 292, 259 So.2d 833, 837 (1972) ("In Estes, the exemption of domestic servants in private homes, and ordained ministers was specifically held constitutional since those two groups constituted reasonable classes which possess characteristics that distinguish them from the other taxed classes."). We again hold that the exempt classifications granted to domestic workers and ordained ministers under Ordinance No. 1120 do not violate the Equal Protection Clause.
Because we find a fair and rational basis underlying the five exempt taxpayer classifications mandated by Act 406 and authorized by Ordinance No. 1120, as interpreted by Jefferson County, we pretermit any further discussion or analysis of any remaining contentions raised by the Richards plaintiffs. See New York Rapid Transit Corp., 303 U.S. at 578, 58 S.Ct. 721 (recognizing that, if any state of facts reasonably can be conceived that would sustain the challenged classification, the judiciary's inquiry into the constitutionality of the legislative act is complete). We note that we have conducted our analysis of the constitutional issue presented in *706 Case No. 1981680 in accordance with the presumption that an ordinance is presumed reasonable and valid, and that the burden is on the one challenging the ordinance to clearly show its invalidity. See Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (discussing presumption of validity of challenged classification and plaintiffs burden of proof to negate "every conceivable or reasonable basis which might support the classification"). Moreover, our review has been constrained by the long-standing principles of statutory construction and interpretation holding that the "wisdom, propriety or expediency of the ordinance is not a matter of review by this court. That is the province of the law-making body of the [County]. The court's duty is to consider the constitutionality and the validity of the ordinance under the constitution and laws of the State of Alabama." Estes, 266 Ala. at 170, 94 So.2d at 747. In Case No. 1981680, we reverse Judge Rochester's order of June 17, 1999, and render a judgment in favor of Jefferson County. We also remand Case No. 1981680 with instructions for the trial court to enter an order directing and implementing a refund to the Triantos class members of all moneys collected pursuant to Judge Rochester's order of June 17, 1999.

Case No. 1990836
Jefferson County appeals from Judge Woodall's order of January 12, 2000, entered in Triantos v. Jefferson County et al., restraining Jefferson County from continuing to collect the occupational tax from the exempt taxpayers, the members of the Triantos class. Judge Woodall's order of January 12, 2000, declared that the members of the Triantos class were specifically excluded from the operation of Act 406 and Ordinance No. 1120; that the members of the Triantos class were thereby exempted from tax liability under the Act and the Ordinance; and that Jefferson County had no authority to levy the occupational tax upon the members of the Triantos class or to collect it from them. We affirm Judge Woodall's order.
Counties, being political subdivisions of the state, have no inherent power of taxation but have only such taxing power as the Legislature delegates to them. "`[U]pon them, in the absence of special constitutional restriction, the general assembly may confer the taxing power in such measure as it deems expedient, "in other words, with such limitations as it sees fit as to the rate of taxation, the public purposes for which it is authorized, and the objects (the persons and property) which shall be subjected to taxation."'" Frazier v. State Tax Comm'n, 234 Ala. 353, 355, 175 So. 402, 403 (1937) (quoting earlier authorities). Although Frazier addressed a municipality's power to tax, the principles stated in Frazier are equally applicable to a county.
Jefferson County's authority to impose the occupational tax exists, and is limited, by virtue of its enabling legislationAct 406. That Act specifically prohibits any county to which the Act applies from further taxing those persons subject to the state licensing sections referenced therein. The persons referenced in Act 406 are the very members of the Triantos class.
We agree with Judge Woodall, that Jefferson County has no authority to levy the occupational license tax upon the members of the Triantos class or to collect it from them. We affirm Judge Woodall's order of January 12, 2000, in which he restrained Jefferson County from continuing to collect the occupational tax from the members of the Triantos class. We further conclude that the stay of Judge Woodall's order, issued by this Court on March 22, 2000, should be lifted. However, the effect *707 of our ruling in Case No. 1981680 will moot the necessity of further action by the trial court in Case No. 1990836.

Case No. 1990961
Triantos appeals from Judge Woodall's failure to order a refund of the moneys collected from the exempt taxpayers by Jefferson County pursuant to Judge Rochester's June 17, 1999, order. His appeal is moot, however, in light of our remand order in Case No. 1981680.

Conclusion
Case No. 1981680. Having concluded that the exempt classifications mandated by Act No. 406 and authorized by Ordinance No. 1120, as interpreted and applied by Jefferson County, do not violate the Equal Protection Clause, we reverse Judge Rochester's injunctive order of June 17, 1999, entered in Case No. 1981680, in which he enjoined Jefferson County from further collecting the occupational tax from the members of the Richards class members unless it also collects the tax from the members of the Triantos class. The exempt classifications, as currently interpreted and applied, do not render the Ordinance unconstitutional on equal-protection grounds and, therefore, it is not for the courts of this State to direct or limit Jefferson County in its implementation of that Ordinance. We reverse Judge Rochester's order of June 17, 1999, and render a judgment in favor of Jefferson County on the complaint. We also remand Case No. 1981680 with instructions for the trial court to enter an order directing a refund from the escrow account of all moneys collected from the Triantos class members pursuant to Judge Rochester's order of June 17, 1999, order.
Case No. 1990836. For these same reasons, we affirm Judge Woodall's injunctive order of January 12, 2000, entered in Case No. 1990836, in which Judge Woodall enjoined Jefferson County from levying and/or collecting the occupational tax from the Triantos class pursuant to Ordinance No. 1120 or Act 406. We conclude that the stay granted by this Court and dated March 22, 2000, of Judge Woodall's injunctive order should be lifted, although our remand in Case No. 1981680 will make unnecessary further action by the trial court in Case No. 1990836.
Case No. 1990923. As discussed above, the appeal by the Richards plaintiffs from the denial of their motion to intervene in the Triantos action is rendered moot by the procedural posture of these appeals.
Case No. 1990961. In light of our ruling in Case No. 1981680, the issue raised in this appeal by the Triantos class, whether Judge Woodall erred in deferring any ruling on their request for a refund from the escrow account of all moneys collected by Jefferson County as occupational taxes from the Triantos class pursuant to Act 406 and Ordinance No. 1120, is rendered moot.
1981680REVERSED AND JUDGMENT RENDERED AND CASE REMANDED WITH INSTRUCTIONS.
1990836AFFIRMED; STAY LIFTED.
1990923APPEAL DISMISSED.
1990961APPEAL DISMISSED.
HOUSTON, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.
JOHNSTONE, J., concurs in part, concurs in the result in part, and dissents in part.
WOODALL[*] and SEE, JJ., recuse themselves.
*708 MOORE, Chief Justice (concurring in part and dissenting in part).
In 1987, acting pursuant to Act No. 67-406, Ala. Acts 1967, the Jefferson County Commission adopted Ordinance 1120. Ordinance 1120 imposed a "license fee" of ½ of 1% (0.5%) on the earnings received from "any kind of work, the rendering of any kind of personal services, or the holding of any kind of position or job within Jefferson County, Alabama by any clerk, laborer, tradesman, manager, official, or other employee." Ordinance 1120 exempted three classes of individuals from its purview: domestic workers in private homes, individuals doing business as "sole proprietorships" who paid fees under the State license code, and individuals doing business as "sole proprietorships" who paid fees to Jefferson County under the County's general business-license code. As a result, the ordinance created an unusually diverse class of exempt citizens, including lawyers, doctors, magicians, astrologers, and operators of hot-dog stands. Some citizens have not been required to pay any fee, either under the ordinance or under the licensing code. Numerous others, including nurses and real-estate appraisers, have been required to pay both this "fee" under the ordinance and a separate license fee. The tax burden that Ordinance 1120 imposed was also unusually diverse. While the license code requires some of the exempt individuals to pay a fixed and nominal sum, the ordinance requires other citizens to pay a percentage of their income.
Jefferson County argued to the United States Supreme Court that the levy made by Ordinance 1120 was an income tax, not a license fee. See Jefferson County, Alabama v. Acker, 527 U.S. 423, 439, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). Jefferson County then argued to this Court that this levy was a license fee, not an income tax. See Parker v. Jefferson County, 796 So.2d 1071 (Ala.2001).
The Richards class challenged Ordinance 1120, asserting that Ordinance 1120 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The trial court agreed, holding that the exemptions embodied in Ordinance 1120, and the exemptions established by the manner in which Jefferson County has enforced Ordinance 1120, violate the Equal Protection Clause. I agree. Even if this Court ignores the hypocrisy of Jefferson County's mutually exclusive arguments to the United States Supreme Court and to this Court, and even if this Court is not bothered by what I consider to be a troubling precedent that a levy based on a percentage of income is a fee and not an income taxI conclude that the trial court correctly held that Jefferson County had violated the Equal Protection Clause in its application of Ordinance 1120.
Today's main opinion states:
"The overarching issue presented in this group of appeals is whether the Equal Protection Clause of the Fourteenth Amendment mandates that all professions and occupations be treated the same by the State of Alabama and by Jefferson County for occupational-tax purposes."
805 So.2d at 693. This attempted statement of the issue is the fundamental error the majority makes in its analysis and in its judgment reversing the judgment in case No. 1981680. In Eagerton v. Gulas Wrestling Enterprises, Inc., 406 So.2d 366, at 370 (Ala.1981), this Court established *709 the fundamental issue in an equal-protection challenge to a license fee or a tax:
"The basic tenet of the equal protection clause is not that all persons must be treated equally, but rather that all persons similarly situated must be treated equally."
See F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)("[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."). In Eagerton, supra, as in the instant case, the plaintiffs contested a levy by Jefferson County on equal-protection grounds. Both the Richards plaintiffs and Jefferson County cited Eagerton as controlling precedent.
The main opinion quotes Jolly v. City of Birmingham, 55 Ala.App. 603, 608, 318 So.2d 300, 304 (1975), for this proposition: "[I]nconsistent enforcement of an ordinance constitutes no argument against the power to pass it." In Allegheny Pittsburgh Coal Co. v. County Commission, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), however, a unanimous United States Supreme Court held that inconsistent enforcement of an otherwise constitutional statute was arbitrary and capricious and thus a violation of the Equal Protection Clause.
Jefferson County deviated from the precedent in Eagerton supra, and F.S. Royster Guano Co., supra, by exempting "preachers," then indulging in an enforcement scheme that arbitrarily and capriciously applied that exemption to preachers who were ordained, but not to preachers who were "unordained."
"The only limitation imposed upon the Legislature is that when it proceeds to impose a tax on occupations or privileges, it must be equal and uniform. The equality and uniformity consist in the imposition of the like tax upon all who engage in the vocation, or who may exercise the privilege taxed."
Nachman v. State Tax Comm'n, 233 Ala. 628, 635, 173 So. 25, 31 (1937) (citations omitted).
Jefferson County's enforcement scheme for Ordinance 1120, by enforcing the ordinance against "unordained" ministers but exempting "ordained" ministers, violated the precedent this Court set in Eagerton, supra, and Nachman, supra, and the precedent the United States Supreme Court set in F.S. Royster Guano Co., supra.
I concur in the main opinion as it relates to Case No. 1990836, Case No. 1990923, and Case No. 1990961. The effort to repair the equal-protection defect noted above by taxing all of the individuals who were previously exempt was a separate error, as the trial judge held. This Court wrote in Siegelman v. Chase Manhattan Bank (USA), N.A., 575 So.2d 1041, 1046 (Ala.1991):
"Neither is it the role of the courts to `usurp the role of the legislature and correct defective legislation or amend statutes under the guise of [judicial] construction.'"
(Citations omitted.) The Court properly holds that the appeals in Case No. 1990923 and Case No. 1990961 have been rendered moot by the resolution of the first two cases.
I would affirm the judgment of the trial court in the Richards litigation, because that court's ruling was constitutionally correct; it was correct because Jefferson County's enforcement of Ordinance 1120 was constitutionally improper. I therefore respectfully dissent as to Case No. 1981680. I concur as to Case No. 1990836, Case No. 1990923, and Case No. 1990961.
*710 JOHNSTONE, Justice (concurring in part, concurring in the result in part, and dissenting in part).
I respectfully dissent from the holding that Ordinance 1120 is constitutional. This ordinance arbitrarily and capriciously exempts a hodgepodge of categories of taxpayers while it does not exempt other virtually indistinguishable categories of taxpayers. These exemptions are not supported or dignified by Act No. 406, Ala. Acts 1967, which requires only a well-defined and logically limited subset of the exemptions. Therefore, I respectfully dissent from the judgment in case number 1981680, Jefferson County v. Richards, reversing that aspect of the order by the trial court declaring that the ordinance, judged together with all of its exemptions, is unconstitutional.
I agree, however, that the trial court lacked authority to remedy the unconstitutionality of Ordinance 1120 by requiring Jefferson County to collect the tax even from the exempted taxpayers. Therefore, I concur in the judgment of this Court reversing and rendering that aspect of the order of the trial court in case number 1981680, Jefferson County v. Richards, authorizing Jefferson County to collect the tax from the exempted taxpayers in order to save the constitutionality of the ordinance. I further concur in the judgment of this Court remanding case number 1981680, Jefferson County v. Richards, "with instructions for the trial court to enter an order directing and implementing a refund to the Triantos class members of all moneys collected pursuant to Judge Rochester's order of June 17, 1999."
I further concur in the judgment of this Court in case number 1990836, Jefferson County v. Triantos, affirming Judge Woodall's January 12, 2000 injunction enjoining Jefferson County from levying or collecting the occupational tax from the Triantos class. I further concur that we should lift our stay of Judge Woodall's injunction.
I concur in the result in case number 1990923, Richards v. Triantos. I would affirm the denial of the Richards plaintiffs' motion to intervene in the Triantos action. The majority achieves the same result by declaring this appeal moot and dismissing it.
Finally, in case number 1990961, Triantos v. Jefferson County, I concur that this appeal is moot. The Triantos appellants are getting the relief they seek from our judgment in case number 1981680, Jefferson County v. Richards, instructing the trial court to direct Jefferson County to refund the monies collected from the Triantos class. Therefore, I concur in the dismissal of the appeal in case number 1990961, Triantos v. Jefferson County.
NOTES
[1] This issue gave rise to a separate appeal that is addressed later in this opinion, under the heading "Case No. 1990961."
[2] In 1999, the Legislature purported to repeal Act No. 406 (1967) by adopting Act No. 99-406 and Act No. 99-669. However, Act No. 99-406 was declared unconstitutional by Judge Woodall in Triantos v. Jefferson County. Act No. 99-669 was declared invalid in Jefferson County Employees' Association et al. v. Jefferson County, Alabama et al. (CV-00-0297), by Circuit Judge William A. Jackson. These issues are not before this Court in these appeals.

In the Regular Session for the year 2000, the Legislature again purported to repeal Act No. 406 (1967). It enacted Act No. 2000-215 to provide for a new occupational tax in Jefferson County. However, in yet another legal challenge to the constitutionality of Jefferson County's occupational tax, Judge Woodall declared Act No. 2000-215 invalid because of legislative procedural deficiencies. See Izzi v. Jefferson State Cmty. Coll. et al. (CV-00-1768). Appeals from this litigation are pending before this Court as Case No. 1000150 and Case No. 1992027.
[3] Black's Law Dictionary 788 (7th ed.1999) defines "mandatory injunction" as "[a]n injunction that orders an affirmative act or mandates a specified course of conduct."
[4] Black's Law Dictionary 788 (7th ed.1999) defines "prohibitory injunction" as "[a]n injunction that forbids or restrains an act," and states, "This is the most common type of injunction."
[*] Justice Woodall was the trial judge in this case.