MURDOCK, Justice.
 

 Jerry M. Blevins appeals from a summary judgment entered against him and in favor of Secretary of State Beth Chapman by the Montgomery Circuit Court on his complaint challenging the constitutionality of § 12 — 17—20(b)(16), Ala.Code 1975. We affirm the summary judgment.
 

 I. Facts and Procedural History
 

 Blevins is an attorney residing in El-more County, which is located in the 19th Judicial Circuit. The 19th Judicial Circuit consists of Elmore, Autauga, and Chilton Counties; within the circuit there are three circuit judges — one for each county to be filled by a resident of that county. It is undisputed that Blevins intends to run in the 2010 election for judgeship no. 3, which is the circuit judgeship designated for Chilton County. Blevins meets all the candidacy qualifications to run for judgeship no. 3 except the requirement in § 12-17 — 20(b)(16), Ala. Code 1975, that he be a resident of Chilton County. As secretary of state, Chapman has taken the position that Blevins’s name cannot be certified for
 
 *230
 
 inclusion on the ballot as a candidate in 2010 for the no. 3 circuit judgeship because he is a resident of Elmore County, not Chilton County.
 

 Section 12-17-20(b)(16), Ala.Code 1975, provides:
 

 “There shall be three circuit judges in the nineteenth judicial circuit. The judge occupying judgeship No. 1 shall be a resident of Elmore County, the judge occupying judgeship No. 2 shall be a resident of Autauga County, and the judge occupying judgeship No. 3 shall be a resident of Chilton County. A person qualifying as a candidate for election to a judgeship under this subdivision shall be a resident of the county for the judgeship the person seeks for a period of not less than one year prior to the date the person qualifies as a candidate for election to the office and thereafter during his or her tenure in office.”
 

 Blevins filed this action against Chapman, as secretary of state, seeking declaratory and injunctive relief and contending that § 12 — 17—20(b)(16), Ala.Code 1975, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that, therefore, he should be entitled to stand as a candidate in the 2010 election for judgeship no. 3 of the 19th Judicial Circuit. After cross-motions for a summary judgment, the trial court ruled in favor of Chapman.
 

 II. Standard of Review
 

 “Our review of constitutional challenges to legislative enactments is
 
 de novo.
 
 See
 
 Jefferson County v. Richards,
 
 805 So.2d 690 (Ala.2001).”
 
 Richards v. Izzi,
 
 819 So.2d 25, 29 n. 3 (Ala.2001).
 

 III. Analysis
 

 Blevins notes that the general residency requirement for circuit judges in Alabama is provided in § 12-17-22, Ala.Code 1975, which provides: “Each circuit judge must have resided in the circuit for which he is elected or appointed for at least 12 months preceding his election or appointment and must reside in such circuit during his continuance in office.” In the 19th Judicial Circuit, unlike the other 15 circuits in Alabama that include more than one county, circuit judges must be residents of the county for the seat they hold, not just a resident of a county within the circuit. Blevins notes that residents of the 19th Judicial Circuit are permitted to vote for all three judicial seats but that in order to be candidate for a seat one must be a resident of the county for which the seat is designated.
 

 Blevins contends that the county-residency requirement for circuit judges in the 19th Judicial Circuit violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Blevins argues that § 12-17-20(b)(16), Ala.Code 1975, violates his fundamental constitutional rights as a candidate and as a voter. Blevins contends that the residency requirement for circuit judges in the 19th Judicial Circuit accords him different treatment as a candidate for circuit judge than candidates for circuit judgeships in every other circuit in Alabama. It also, he argues, limits the options of voters in the 19th Judicial Circuit by keeping an otherwise qualified candidate who resides in the circuit from running for a judgeship located in one of the two counties in which the candidate does not reside. Blevins insists that these limitations are unconstitutional under the Equal Protection Clause.
 

 We begin by determining the level of scrutiny that must be applied in evaluating the constitutionality of § 12-17-20(b)(16).
 

 “The Equal Protection Clause allows the States considerable leeway to enact
 
 *231
 
 legislation that may appear to affect similarly situated people differently. Legislatures are ordinarily assumed to have acted constitutionally. Under traditional equal protection principles, distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State’s goals and only if no grounds can be conceived to justify them. See,
 
 e.g., McDonald v. Board of Election Comm’rs,
 
 394 U.S. 802, 808-809 (1969);
 
 McGowan v. Maryland,
 
 366 U.S. 420, 425-426 (1961). We have departed from traditional equal protection principles only when the challenged statute places burdens upon ‘suspect classes’ of persons or on a constitutional right that is deemed to be ‘fundamental.’
 
 San Antonio Independent School Dist. v. Rodriguez,
 
 411 U.S. 1, 17 (1973).”
 

 Clements v. Fashing,
 
 457 U.S. 957, 962-63, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Statutes that infringe upon fundamental rights or that burden “suspect classes” “are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.”
 
 City of Cleburne v. Cleburne Living Ctr.,
 
 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).
 

 Blevins contends that § 12 — 17—20(b)(16) should be subjected to “strict scrutiny” analysis and that Chapman failed to proffer a compelling state interest for the residency requirement therein for the circuit judges in the 19th Judicial Circuit. The problem with Blevins’s contention is that the residency requirement, as a ballot-access restriction, is initially and directly
 

 “felt by aspirants for office, rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.
 
 McDonald v. Board of Election,
 
 394 U.S. 802 (1969).”
 

 Bullock v. Carter,
 
 405 U.S. 134, 142-43, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (footnote omitted).
 

 As the above-quoted language from
 
 Bullock
 
 indicates, although the right to vote is itself a fundamental right, not every law that affects this right is subject to strict-scrutiny analysis.
 

 “It is beyond cavil that ‘voting is of the most fundamental significance under our constitutional structure.’
 
 Illinois Bd. of Elections v. Socialist Workers Party,
 
 440 U.S. 173, 184 (1979). It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute.
 
 Munro v. Socialist Workers Party,
 
 479 U.S. 189, 193 (1986). The Constitution provides that States may prescribe ‘[t]he Times, Places and Manner of holding Elections for Senators and Representatives,’ Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections.
 
 Sugarman v. Dougall,
 
 413 U.S. 634, 647 (1973);
 
 Tashjian v. Republican Party of Connecticut,
 
 479 U.S. 208, 217 (1986). Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; ‘as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather
 
 *232
 
 than chaos, is to accompany the democratic processes.’
 
 Storer v. Brown,
 
 415 U.S. 724, 730 (1974).
 

 “Election laws will invariably impose some burden upon individual voters. Each provision of a code, ‘whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects — at least to some degree — the individual’s right to vote and his right to associate with others for political ends.’
 
 Anderson v. Celebrezze,
 
 460 U.S. 780, 788 (1983). Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to assure that elections are operated equitably and efficiently.... Accordingly, the mere fact that a State’s system ‘creates barriers ... tending to limit the field of candidates from which voters might choose ... does not of itself compel close scrutiny.’
 
 Bullock v. Carter,
 
 405 U.S. 134, 143 (1972);
 
 Anderson, supra,
 
 460 U.S., at 788;
 
 McDonald v. Board of Election Comm’rs of Chicago,
 
 394 U.S. 802 (1969).”
 

 Burdick v. Takushi,
 
 504 U.S. 428, 433-34, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).
 

 Where restrictions on candidates’ ballot access are concerned,
 

 “the need for strict scrutiny might arise if, after ‘realistic’ examination of the circumstances of the case, it is concluded that the candidate restrictions have a ‘real and appreciable impact’ on the voters’ rights. In
 
 Bullock [v. Carter,
 
 405 U.S. 134 (1972),] the Supreme Court found that the burden on voters was ‘neither incidental nor remote’ because so many office seekers were excluded that the voters’ choice of candidates was ‘substantially limited,’ and because the law especially burdened a group of voters forming a particular constituency with a common viewpoint (the poor). Thus the critical inquiry is whether the challenged law substantially diminishes the field of candidates (and thus substantially diminishes voter choice) and whether the law has a disparate impact on a cognizable political group.”
 

 Joseph v. City of Birmingham,
 
 510 F.Supp. 1319, 1330 (D.C.Mich.1981) (footnote omitted).
 

 Bullock
 
 involved the primary-election filing-fee system in the State of Texas, which required candidates for local office to pay fees as high as $8,900. The United States Supreme Court concluded that the filing-fee system violated the Equal Protection Clause. In contrast to the filing-fee system evaluated in
 
 Bullock,
 
 the United States Supreme Court in
 
 Clements v. Fashing,
 
 supra, considered the constitutionality of § 19 of the Texas Constitution, which established a maximum “waiting period” of two years for a sitting justice of the peace to run for a seat in the Texas legislature. The
 
 Clements
 
 Court concluded that § 19
 

 “places a
 
 de minimis
 
 burden on the political aspirations of a
 
 current
 
 officeholder. Section 19 discriminates neither on the basis of political affiliation nor on any factor not related to a candidate’s qualifications to hold political office. Unlike filing fees or the level-of-support requirements, § 19
 
 in no way burdens access to the political process by those who are outside the ‘mainstream’ of political life.”
 

 457 U.S. at 967, 102 S.Ct. 2836 (final emphasis added). In short, the provision did not “contain any classification that imposes special burdens on minority political parties or independent candidates. The burdens placed on those candidates subject to
 
 *233
 
 § 19 ... in no way depend upon political affiliation or political viewpoint.”
 
 Clements,
 
 457 U.S. at 965, 102 S.Ct. 2836.
 

 The residency requirement in § 12-17-20(b)(16) does not substantially diminish the field of candidates, nor does it discriminate based on political affiliation or viewpoint. It treats all candidates in the 19th Judicial Circuit equally and all voters in the 19th Judicial Circuit equally.
 
 [1]
 
 It does not matter that the statute imposes a different requirement for residency on candidates for judgeships in the 19th Judicial Circuit than it does on candidates for judgeships in other circuits throughout the state because “the Equal Protection Clause relates to equality between persons as such, rather than between areas and ... territorial uniformity is not a constitutional prerequisite.”
 
 McGowan v. Maryland,
 
 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Therefore, § 12 -17-20(b)(16) must be evaluated using a “rational basis” analysis.
 

 Although Blevins relies heavily on the case of
 
 Hadnott v. Amos,
 
 320 F.Supp. 107 (M.D.Ala.1970), for his argument that § 12-17-20(b)(16) must satisfy the “strict scrutiny” standard,
 
 Hadnott
 
 was decided before the United States Supreme Court’s landmark election-law decision,
 
 Anderson v. Celebrezze,
 
 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), which established that election laws ordinarily should not be subjected to “strict scrutiny” and instead should be evaluated “by an analytical process that parallels [the Court’s] work in ordinary litigation.”
 
 Anderson,
 
 460 U.S. at 789, 103 S.Ct. 1564. Thus,
 
 Hadnott
 
 does not contradict our conclusion that § 12-17-20(b)(16) must satisfy “rational basis” analysis rather than “strict scrutiny.”
 

 Even so, it is interesting that the
 
 Hadnott
 
 Court concluded that Alabama had a compelling state interest for its general residency requirement for circuit judges, which is now codified, as noted above, at § 12-17-22, Ala.Code 1975. Among the reasons the
 
 Hadnott
 
 Court listed as compelling state interests for the general residency requirement of state circuit judges were the following:
 

 “We conclude that the State of Alabama has [a] compelling state interest in imposing a substantial pre-election residence requirement for circuit judges.
 

 [[Image here]]
 

 [[Image here]]
 

 “The State of Alabama has a compelling state interest in exposing to the voters for a substantial period of time before election the person who will be a candidate for state circuit judge. The circuit court is the basic court of the state judicial system, the keystone of the structure. ...
 

 [[Image here]]
 

 “We consider it to be of urgent importance that the voter have an opportunity to observe, learn about and appraise those who seek to be candidates for a key judicial office that touches important events and relationships of their lives and of the community in which they live. There are innumerable qualities and qualifications that are relevant.
 

 [[Image here]]
 

 “The catalog could be endless. The democratic process contemplates that the voters shall make a choice. In the case of this important judicial office the state has a compelling interest in attempting to see that the voters have the opportunity that their choice be an in
 
 *234
 
 formed one. Assertion of the state interest will bring imperfect results. Less than all voters will observe, learn and rationally choose, but this is not to deny to the state its interest in extending the opportunity.”
 

 Hadnott,
 
 320 F.Supp. at 119-21.
 

 Echoing the above-stated rationale, the residency requirement imposed by § 12 — 17—20(b)(16) gives the voters of each county in the 19th Judicial Circuit the opportunity for a greater level of familiarity with the candidates for at least one of the judgeships in the circuit. Conversely, it ensures that among the three judges of the 19th Judicial Circuit, at least one judge will be familiar with each county within the circuit. It promotes the appearance of justice by preventing a more populous county from dominating the judicial seats in the circuit. It avoids the possibility of excessive recusals: by requiring that the three circuit judges be residents from the three counties that compose the circuit, it reduces the chances that more than one of the judges in the circuit might have to recuse himself or herself from a case because of familiarity with the parties or because of the circumstances of the case.
 
 [2]
 

 “[W]hen a state election law provision imposes only ‘reasonable, nondiscriminatory restrictions’ upon the First and Fourteenth Amendment rights of voters, ‘the State’s important regulatory interests are generally sufficient to justify5 the restrictions.”
 
 Burdick,
 
 504 U.S. at 434, 112 S.Ct. 2059. Consequently, § 12-17-20(b)(16) does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
 

 IV. Conclusion
 

 Because the residency requirement for judges of the 19th Judicial Circuit imposed by § 12 — 17—20(b)(16), Ala.Code 1975, passes constitutional muster, we conclude that the trial court’s summary judgment in favor of the Secretary of State concerning Blevins’s complaint for declaratory and in-junctive relief is due to be affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
 

 BOLIN, J., concurs in the result.
 

 [1]
 

 . See, e.g.,
 
 City of Cleburne,
 
 473 U.S. at 439, 473 U.S. 432 (noting that "[t]he Equal Protection Clause ... is essentially a direction that all persons similarly situated should be treated alike.” (citing
 
 Plyler
 
 v.
 
 Doe,
 
 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982))).
 

 [2]
 

 . We do not intend to suggest that this is an exhaustive list of rational reasons for the residency requirement imposed by § 12 — 17— 20(b)(16).