94 So.2d 744

Hoyt ESTES et al.

v.

CITY OF GADSDEN et al.

7 Div. 331.

Supreme Court of Alabama.

March 7, 1957.

Rehearing Denied May 9, 1957.

Hawkins & Rhea, Gadsden, and Kerr & Cain, Alabama City, for appellants.

Roberts & Orme and Lusk, Swann & Burns, Gadsden, for appellees.

**STAKELY, Justice.**

Plaintiffs in this case (appellants) seek a declaratory judgment and injunction against the enforcement of Municipal Ordinance No. 1758 enacted by the Board of Commissioners of Gadsden on June 2, 1956, and the rules and regulations adopted by the city for the enforcement of the ordinance. The case was submitted for final decree on the original complaint as amended, answer as amended of the defendants and on the testimony heard orally before the court, all as noted by the register.

Upon a consideration of the matter Judge Robert M. Hill, who was specially assigned to this case, entered a final decree upholding the validity of the ordinance. In connection with the final decree he filed an able opinion to which we shall not hesitate from time to time to refer.

The ordinance imposes an annual license fee for the privilege of engaging in or following any trade, occupation or profession within the corporate limits of the city and covers all salaried or wage-earning employees. It applies to any clerk, laborer, tradesman, manager or official, or other employee, including nonresidents of the city, where the relationship of employer-employee exists, who are engaged in the doing of any kind of work or the rendering of any kind of personal services or the holding of any kind of position or job within the city, provided the work or services are done within the city. It does not include those businesses, professions or occupations already covered by a prior adopted general license schedule, Ordinance No. 1749. Domestic servants employed in private homes and ministers of religion are exempted.

The ordinance prescribes the measurement of the tax to be: "One percent of the gross receipts of each such person" and gross receipts is defined to "include the total gross amount of all salaries, wages, commissions, bonuses, or other money payment of any kind, or any other consideration having monetary value, which a person receives from, or is entitled to receive from or be given credit for by his employer for any work done or personal service rendered in any trade, occupation or profession, including any kind of deductions before 'take-home' pay is received. * * *" Allowances for traveling and other expenses incurred for work done for the employer are not included in gross receipts as to amounts actually so spent.

Provision is made in the ordinance for the allocation of compensation where only a part of it is earned within the city. Other sections provide for withholding of the license fee by employers; the making of returns by employees under certain conditions; the enforcement of the ordinance by the City Director of Revenue or agent who is given authority to examine books, papers and records of employers and licensees; the city commission is given the authority to prescribe and adopt by resolution rules and regulations for enforcement. There are other provisions in the ordinance which need not be here specifically referred to except that the ordinance contains the usual severability clauses and a clause providing that all conflicting ordinances are repealed to the extent of any conflict existing. The effective date of the ordinance is fixed at July 1, 1956, and it is further provided that the ordinance shall be in force and effect from year to year thereafter until repealed.

The rules and regulations for the most part follow rather closely the wording of the authority given in the ordinance itself. They provide questionnaire procedures, establish a test for determining whether relationship of employer-employee exists, define an individual contractor as distinguished from an employer, and reiterate that partners of a firm or an officer of a firm or corporation shall pay the tax if he

receives a salary for personal services rendered in business.

■ It should be clearly understood at the outset that the wisdom, propriety or expediency of the ordinance is not a matter for review by this court. That is the province of the law-making body of the city. The court's duty is to consider the constitutionality and the validity of the ordinance under the constitution and laws of the State of Alabama.

■ I. We must first determine what we may consider a preliminary contention to the effect that the ordinance was defectively passed in that some of the provisions of § 422, Title 62, Code of 1940, and possibly that some of the provisions of §§ 456, 462, Title 37, Code of 1940, were not observed. However, as shown by the amended minutes introduced in evidence, all statutory requirements were observed in the passage of the ordinance. It is argued that the amendment is of no avail because it is not an effort to make the original minutes speak the truth as to what actually happened, but only reveals that on July 31, 1956, the city went through a formality attempting to do then what it had not done on the date of passage of the ordinance, June 2, 1956. It appears, however, from the amended minutes that the minutes of June 2, 1956, were "amended nunc pro tunc to correct and actually set forth what was said and done at such meeting," referring to the meeting of June 2, 1956. The court found that no intervening rights of third persons arose in the interim and, therefore, the city commission had the right to amend, if such was necessary, to make the minutes speak the truth. We may add there is nothing before the court to indicate that the minutes do not speak the truth. The fact that the amendment was made after this suit was filed is immaterial. Harris v. Town of East Brewton, 238 Ala. 402, 191 So. 216; City of Guntersville v. Walls, 252 Ala. 66, 39 So.2d 567.

■ II. It is earnestly insisted that the ordinance levies a tax not authorized or permitted by the constitution or the general law of Alabama. We observe here that municipalities and counties being political subdivisions of the state have no inherent power of taxation but have only such taxing power as is delegated to them by the legislature. But "upon them, in the absence of special constitutional restriction, the general assembly may confer the taxing power in such measure as it deems expedient,— 'in other words, with such limitations as it sees fit as to the rate of taxation, the public purposes for which it is authorized and the objects (the persons and property) which shall be subjected to taxation.'" Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 403, 110 A.L.R. 1479.

Under § 733, Title 37, Code of 1940, authority is granted by the legislature to cities to fix and collect licenses for any business, trade and profession in the exercise of its police power. In § 735, Title 37, Code of 1940, the legislature has provided that, "All municipalities shall have the power to license any exhibition, trade, business, vocation, occupation, or profession not prohibited by the constitution or laws of the state, which may be engaged in or carried on in the city or town * * *. The power to license conferred by this article may be used in the exercise of the police power as well as for the purpose of raising revenue * * *." In the instant case the parties agree and the court found that the tax in question is not levied under the police power, § 733, Title 37, Code of 1940, but is a revenue measure.

Section 89 of the Constitution of 1901 prohibits municipalities from passing any laws inconsistent with the general law of the state. In the case of Smalley v. City of Oneonta, 253 Ala. 663, 46 So.2d 201, 203, in dealing with a privilege license of bricklayers within the city, this court said:

"The State may delegate its power to municipal corporations to license oc-

cupations within the limits of the city coextensive with the power of the State to do so and this power is limited only by the due process and equal protection provisions of the constitution. * * * The due process provision would prevent a license tax either for revenue or regulation to be confiscatory. Equal protection is satisfied when all persons of the same class fairly made are subject to the same amount and terms of such tax law. * * *

"This power to license which the State has and which it has conferred upon cities is not for the purpose of extending a privilege to one to engage in a business in which he does not have the absolute right to do so without such permit. Because the employment is for lawful gain and is a natural and inherent right does not exempt it from being a taxable event. 'But natural rights, so called, are as much subject to taxation as rights of less importance. An excise is not limited to vocations or activities that may be prohibited altogether. It is not limited to those that are the outcome of a franchise. It extends to vocations or activities pursued as of common right. What the individual does in the operation of a business is amenable to taxation just as much as what he owns, at all events if the classification is not tyrannical or arbitrary "Business is as legitimate an object of the taxing power as property."' * * *"

In Van Hook v. City of Selma, 70 Ala. 361, this court also said: "The power of the State to authorize the license of all classes of trades and employments cannot be doubted. And there is just as little doubt of the power to delegate this right to municipalities, either for the purpose of revenue, or that of regulation. Ex parte City Council [of Montgomery], in re Knox, 64 Ala. 463; Cooley on Const.Lim. 581."

It is argued that the tax involved in the instant ordinance is in reality either an income tax or a property tax and not a license or privilege tax and as such is prohibited by § 214 of the Constitution which limits property taxes to ⁶⁵⁄₁₀₀th of one percent on the value of taxable property and is otherwise unauthorized and as such is also prohibited by § 216 of the constitution, which limits the rate of taxation by a municipality including the City of Gadsden. In the case of Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 59, 11 A.L.R. 300, this court held that income was property within the meaning of § 214 of the constitution and held invalid a graduated tax of two to four percent on incomes imposed by the Revenue Act of 1919. Under the income tax amendment to the constitution in 1933, Amend. No. 25, an income tax was enacted by the state but this court in the Eliasberg case made the distinction between income and property taxes on the one hand and occupation or privilege taxes on the other. This court in the foregoing authority said:

"The decision in the Lott case [Lott v. Ross, 38 Ala. 156] was that a legislative grant of power to Mobile county to levy a specified tax on the 'taxable property' within the county did not authorize the imposition of a tax on the gross amount of sales of merchandise, for the reason that such a tax 'is not a tax upon the goods themselves, or the fruits of the sale, but upon the business or act of selling.' And it was further said that 'this is not, then, a property or income tax, but an occupation or privilege tax' * * *. It is clear from this language that this court, 60 years ago, conceived of a tax on income as a property tax, and carefully distinguished it from an excise tax on occupation or business."

■ The ordinance which is now before the court lays the tax upon the privilege of working and rendering services within the city and measures the value of the privilege

by the amount of gross receipts of each person. It is true that the character of any tax should be determined by its incidences and not by the name given it or necessarily the language used. In Evers v. City of Dadeville, 258 Ala. 53, 61 So.2d 78, 82, it is pointed out that "The sale tax is 'a privilege or license tax against the person.'"

This court in a case dealing with a privilege tax on hotels said in the case of Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642, 643, that, "There is no merit in the assertion that the municipalities of this state are without legislative authority to so frame their ordinances as to make gross receipts the basis of the computation of a license." The court then quoted § 735, Title 37, Code of 1940, to the effect that "all municipalities shall have the power to license any exhibition, trade, business, vocation, occupation or profession not prohibited by the constitution or laws of the state, which may be engaged in or carried on in the city or town * * * to require sworn statements as to the amount of capital invested, or value of goods or stock, or amounts of sales or receipts where the amount of the license is made to depend upon the amount of capital invested, or value of goods or stock or amount of sales or receipts * * *."

In the case of Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25, 31, this court said:

"This court more than seventy years ago committed itself to the proposition that a tax upon 'the gross amount of sales of merchandise' was not a tax upon the goods themselves, or fruits of sale, but upon the business or act of selling; that it was not a *property* or *income tax,* but an occupation or privilege tax, the amount being regulated by the extent to which the privilege has been enjoyed. * * *

"The only limitation imposed upon the Legislature is that when it proceeds to impose a tax on occupations or privileges, it must be equal and uniform. The equality and uniformity consists in the imposition of the like tax upon all who engage in the vocation, or who may exercise the privilege taxed. * * *"

In the case of Town of Guntersville v. Wright, 223 Ala. 349, 135 So. 634, it was held that a fee for the privilege of delivering gasoline in the city by one whose place of business was without the city was valid and the tax was stated to be a license tax.

In the case of Sanford Service Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856, this court approved a tax fixed by city ordinance on the act of delivering gasoline within the city from a point without the city and state by one not otherwise engaged in business in the city. The court found this tax to be an excise tax. Likewise in State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843, a tax of one-half of one percent of gross sales of lubricating oil in quantities of twenty-five gallons or more, was sustained as a privilege for so selling oil within the city.

It will be observed that the amount of the instant tax is measured entirely by gross receipts and, therefore, it is argued that this shows that this is an income tax. But this provision is merely a manner of measuring the tax.

To summarize the situation, we think that the tax in question is not a property or income tax but is a privilege tax or license tax within the power of the city to enact. It is insisted that the legislative intent and historical concept regarding licensing by cities does not extend to the licensing of an individual of his right to earn a living or his act of performing duties as an employee. We call attention again to the proposition that the power given cities by the legislature in § 735 is unequivocal in words without any language restricting or qualifying its exercise, except that it must not offend the general law and Constitution of the State. In other words exhibitions, trades, businesses, vocations, oc-

cupations and professions appear to this court as to the trial court to be sweeping in coverage.

■ The right to earn a livelihood is an inalienable right guaranteed by the Bill of Rights but it does not operate to relieve from taxation as against an expressed grant of power. City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248. It will be recalled that in the Smalley case, supra [253 Ala. 663, 46 So.2d 203], this court used the following language, "Because the employment is for lawful gain and is a natural and inherent right does not exempt it from being a taxable event."

It is seriously argued that the instant tax is in classification unreasonable, capricious and discriminatory. In the case of Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 406, 110 A.L.R. 1479, this court said:

"As stated for this court in Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25, the only limitation imposed upon the Legislature is that when it proceeds to impose a tax on occupations or privileges, it must be equal and uniform. The equality and uniformity consists in the imposition of the like tax upon all who engage in the vocation, or who may exercise the privilege taxed.  *  *  *"

■ It has been oftentimes stated that classification under the constitution is necessarily elastic, except that it should be made according to reasonable, just and practical rules. If the selection is neither capricious nor arbitrary and rests upon some reasonable consideration of difference or policy as between the various groups and individuals taxed in the city, the courts have held that the classification is proper and that there is no denial of the equal protection of the law. Equal protection is satisfied when all persons of the same class fairly made are subject to the same amount and terms of such tax laws. Smalley v. City of Oneonta, supra.

In State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843, 847, it is said:

"As pointed out in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 'A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' "

In the case of State v. Pure Oil Co., supra, in dealing with the question of classification five tests for legitimate classification under the taxing power are set forth. The appellants insist that the classification in the instant case does not meet these tests and fails in that it does not bring within its influence all who are under the same condition and apply equally to each person or member of the class and that it is not based on substantial distinctions which make one class different from another. However, if a city or state has the power to levy a privilege license on the doing of all work or performing of all type services, we believe it unreasonable to exact of the people's lawmaking body that they provide a distinct and separate classification for the many, many different types of work done and services rendered which people are capable of doing and which they in fact do. For example some plumbers or architects or accountants are self employed and offer their services to the general public. Others do not do this but hire out to a specific employer. Does the fact that there may

be some plumbers, architects, accountants, who fall in the first group of self employed persons, and some architects, accountants or plumbers who fall in the second group, mean there is no substantial distinction which makes the one class different from the other? The fact that the employee group is salaried or wage-earning, whereas the other group is not, would provide the substantial distinction which makes the one class different from the others and brings within the influence all who are under those same salary or wage earning conditions and applies equally to all in the class at the rate of one percent. See Cary v. City of Bellingham, 41 Wash.2d 468, 250 P.2d 114, at page 116. Furthermore, we see no reason why, for example, plumbers, architects or accountants must each be put in a separate class, because of a difference in the nature of their respective work. Each can, of course, be put into a separate classification and if so, why can they not be put in the same class if they are all paid by an employer and draw their pay in the City of Gadsden?

■ III. As to the amount of one percent levied, this court has just held that the extent of the burden is a matter for the discretion of the lawmakers, unless the act is so arbitrary as not to be an exercise of the taxing power at all, the form of the tax being a cloak for something else. Bessemer Theatres v. City of Bessemer, 261 Ala. 632, 75 So.2d 651.

■ IV. It is argued that the ordinance discriminates against independent contractors and others by the prior adopted general license schedule No. 1749 of the city. The law does not require exact equality but only requires uniformity on all those within a class. Here it is put on a percentage basis of one percent. It appears though from Ordinance 1749 that self employed persons and businesses of various kinds are also taxed with a privilege tax, some with definite amounts whether they make any net profits or not, some on graduated scales if gross receipts exceed certain amounts, all of whom, contrary to the case of employees, must pay expense in the operation of their trade or business. Doubtless there may be inequalities but our courts are committed to the proposition, as stated by the Supreme Court of the United States in Lawrence v. State Tax Commission, 286 U.S. 276, 284, 52 S.Ct. 556, 559, 76 L.Ed. 1102, as follows:

"The equal protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions."

■ V. The clause in the statute authorizing licenses "not exceeding one year" refers merely to the term of the license. The city had authority to prescribe its license schedule to run from year to year. Woco-Pep Co. of Montgomery v. Town of Wetumpka, 221 Ala. 565, 130 So. 72.

■ VI. It is insisted that discrimination exists in the ordinance since domestic servants in private homes and ministers of recognized religious bodies are exempted. Domestic servants in the Alabama Workmen's Compensation Law and in the Alabama Unemployment Compensation Act are exempted and it does not appear that the classification in those statutes have ever been held to offend the law of equality and uniformity. This court approves the reasoning of the court in the case of City of Louisville v. Sebree, 308 Ky. 420, 214 S.W. 2d 248, 256. In that case it was said:

"It seems to us that the nature of the work and their relation to the home set apart domestic servants employed therein from any other class. Ordinarily, only one or two are so employed, and they are often regarded as members of the household. They are connected with the maintenance of the house and premises in such a way that their work and duties have to do with the running of the home and the minister-

ing to the wants, comforts and conveniences of the members of the household. They are not engaged in industry or commercial activity, although, of course, they receive compensation for their services. * * * We think substantial differences exist between this and other occupations. They justify its selection as a particular class to be relieved of the occupational tax * * *."

 VII. It is claimed that the withholding provision of the ordinance and rules are void and illegal. This contention appears to be answered to the contrary by this court in the case of Beeland Wholesale Co. v. Kaufman, 234 Ala. 549, 174 So. 516, wherein a like provision in the Alabama Unemployment Compensation Law was reviewed and approved.

Just as the trial court held, we, too, believe that the ordinance in question of the City of Gadsden must be upheld.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.