INGRAM, Justice.
This appeal arises from the City of Birmingham’s action to collect a municipal business license tax from American Bankers Life Assurance Company of Florida (“American Bankers”). The license tax is based upon the gross premiums received on insurance policies issued to citizens of the City. After finding the tax valid and determining that, for purposes of the tax, American Bankers did transact business in Birmingham, the trial court entered a summary judgment in favor of the City for $36,376.37, the amount of the license tax and penalties due for the years 1988 through 1992. American Bankers appeals from that judgment.
The dispositive issue on appeal is whether American Bankers’ conduct in issuing insurance policies in Birmingham constitutes transacting business in Birmingham for purposes of the imposition of the municipal business license tax.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank, 540 So.2d 732, 734 (Ala.1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed in the light most favorable to the nonmovant. Southern Guar. Ins. Co., supra, at 734.
 Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the opposing party must present substantial evidence creating a genuine issue of fact. Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
American Bankers is a Florida corporation, with its home office and principal place of business in Miami, Florida. American Bankers sells disability and credit life insurance policies through various financial institutions in Birmingham, usually in regard to purchases of consumer goods. In a typical transaction, a customer who desires to finance the purchase price of a consumer good may obtain the financing either directly through the seller or by the customer’s own efforts through some other lender. The credit application that the customer completes often has a provision permitting the customer to purchase credit-based insurance coverage, which will pay the balance of the debt owed if the customer dies or becomes disabled before paying the debt.
Most retailers do not provide their own financing, so when a customer applies for financing directly through them they forward the customer’s credit application to a local lending institution. The loan officer that processes the credit application possesses documents from American Bankers to facilitate the issuance of credit life and disability insurance. If the customer indicates that he wants to acquire such insurance, the loan officer completes the documents and forwards them to the lending institution’s home office, which sends them to the American Bankers office in Miami. When the documents are completed at the lending institution, the insurance policy is in full effect, subject only to later review by personnel at the American Bankers Miami office.
American Bankers pays commissions to the lending institutions that furnish the applications to customers. These commissions are calculated upon the amount of premiums collected from the owner of the policy, the consumer-borrower. Further, American Bankers is registered with the Alabama Insurance Commission, and its registration indicated that it had approximately 30 agents licensed by the Commission within the Birmingham area during the period in question in this case. The terms of the relationship between American Bankers and its agents are provided in the American Bankers “Agency Agreement.” That agreement pro *452 vides an American Bankers agent with the following authority:
“Agent has full power and authority to receive and accept proposals for insurance covering such kinds of insurance as the Company may, from time to time, authorize to be insured; to charge the premium for such proposals in accordance with the manuals, rate charts or other instructions by the Company, to collect, receive and receipt for premiums on insurance and to receive commissions as hereinafter provided.
“The Agent is authorized to effect cancellation of policies placed with the Company by legal notice, in accordance with the terms and conditions of said policies, for non-payment of premiums or for causes inherent in a particular risk or risks, but shall not otherwise cancel policies of Company, nor cancel and replace policies of Company with those of another company or companies without agreement and written instruction by Company. Upon instruction by Company, Agent shall promptly cancel any outstanding policy or certificate.”
American Bankers argues that it does not do business in Birmingham and that the sales of its insurance in Birmingham are legally inconsequential and therefore insufficient to serve as a basis for imposing a business license tax upon it.
The State of Alabama authorizes municipalities to impose business license fees upon businesses, trades, and professions for the privilege of conducting business within the city or town. Section 11-51-90, Ala.Code 1975, provides the following:
“(a) All municipalities shall have the power:
“(1) To license any exhibition, trade, business, vocation, occupation or profession not prohibited by the Constitution or laws of the state which may be engaged in or carried on in the city or town;
“(2) To fix the amount of licenses, the time for which they are to run, not exceeding one year, to provide a penalty for doing business without a license and to charge a fee ... not exceeding $.50 for issuing each license; ...
“(b) The license authorized by subsection (a) of this section as to persons, firms or corporations engaged in business in connection with interstate commerce shall be confined to that portion within the limits of the state and where such person, firm or corporation has an office or transacts business in the city or town imposing the license.”
Section 11-51-120 through 11-51-123, Ala. Code 1975, authorizes municipalities to impose a municipal license tax on premiums earned by the sale of insurance policies within the city or town. Section 11-51-121 provides in pertinent part:
“(a) No license or privilege tax or other charge for the privilege of doing business shall be imposed by any municipal corporation upon any insurance company, other than fire and marine insurance companies, doing business therein or its agents which shall exceed for the company and its agents the following amounts:
“(4) Each such insurance company, in cities and towns having a population of more than 50,000, $50.00 and $1.00 on each $100.00 and major fraction thereof of gross premiums, less return premiums, received during the preceding year on policies issued during said year to citizens of said cities and towns.”
Schedule 136 of the City of Birmingham License Code, Ordinance No. 85-259, provides for the levy of tax based upon the classification as an insurance company other than fire and marine, in accord with § 11 — 51— 121. This Court has repeatedly upheld occupational license taxes. Estes v. City of Gadsden, 266 Ala. 166, 94 So.2d 744 (Ala.1957); McPheeter v. City of Auburn, 288 Ala. 286, 259 So.2d 833 (1972); Jolly v. City of Birmingham, 55 Ala.App. 603, 318 So.2d 300 (1975). Further, it is the location of the risks and the premiums received thereon, and not the domicile of the insurance company, that determines the municipality to which the license tax is due. Appleman on Insurance § 10930 (1982).
The City of Birmingham provided overwhelming evidence to show that American Bankers does indeed transact insurance busi *453 ness in Birmingham. American Bankers has been classified under Schedule 136 of the Birmingham License Code since 1985. From 1985 through 1987, American Bankers calculated its tax liability based upon that schedule and remitted payment of its business license tax for those years. Further, as stated above, during the period in question, there were approximately 30 persons registered with the State of Alabama Insurance Commission as agents for American Bankers in the Birmingham area, under Ala.Code 1975, § 27-3-27. Although a representative of American Bankers stated that in the corporation’s vernacular the persons who dispense its insurance are “accounts,” and not “agents,” it is clear that the persons who solicit applications and issue policies for American Bankers act as agents of American Bankers.
Further, the fact that American Bankers does not have an office in Birmingham does not preclude the City from levying its license tax upon American Bankers. Merely transacting business within the city will suffice to subject American Bankers to the tax. Ala. Code 1975, § 11 — 51—90(b), supra. If we accepted the argument that an insurer with no office in a particular municipality cannot be found to transact business in that municipality, then the insurer could escape all municipal license taxes by stationing its offices in the municipalities of its choice and having its agents collect only premiums from insureds outside the municipalities where those offices are located. Clearly, that would defeat the taxation scheme of the Alabama Code sections set out above.
Because we have determined that American Bankers’ activities in Birmingham constituted transacting business for purposes of being subject to the City’s license tax, we pretermit discussion of other issues raised on appeal. The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES, STEAGALL and COOK, JJ., concur.