This case is before this Court on two certified questions from the United States District Court for the Middle District of Alabama, where it is on remand from the United States Court of Appeals for the Eleventh Circuit. See Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1283
(2000). The "long and protracted history" of this litigation is fully set forth in Dillard, 225 F.3d at 1274. See also Dillard v. Baldwin CountyBd. of Educ., 686 F. Supp. 1459 (M.D.Ala. 1988); Dillard v. BaldwinCounty Comm'n, 694 F. Supp. 836 (M.D.Ala.), amended by, 701 F. Supp. 808
(M.D.Ala.), aff'd, 862 F.2d 878 (11th Cir. 1988).
This litigation began in 1986, when "John Dillard and other African American voters ['the Dillard plaintiffs'] brought suit against the Baldwin County Commission alleging that the at-large system used to elect its members violated section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973." Dillard, 225 F.3d at 1274. "The case was one among many Dillard suits in the district courts which challenged the at-large election systems used by dozens of cities, counties, and school boards across Alabama." Id.[1]
In 1986, the Baldwin County Commission ("the Commission") "was composed of four persons elected at-large, one from each of four numbered districts." 225 F.3d at 1274. The authority for that system of government for Baldwin County was Act No. 239, 1931 Ala. Local Acts 100, which "created . . . a Commission form of government for [Baldwin] County to consist of a Commission of four members." Id. Act No. 239 not only defined the number of commissioners, but set the boundaries of the districts in which the commissioners were to reside. Id. The Legislature amended Act No. 239 in 1973, and again in 1975, to redefine the four districts. See Act No. 151, 1973 Ala. Acts 188, and Act No. 841, 1975 Ala. Acts 1681.
The Commission "conceded liability and the district court ordered relief." 225 F.3d at 1274. Specifically, the district court ordered the Commission "to increase its membership from four to seven persons elected from single-member districts in order to ensure a majority-black voting district." Id.
In 1996, Dale Eugene Brown, George R. Johnson, James Austin, Jr., and Alvin Lee Pitts filed a complaint in intervention as plaintiffs (hereinafter collectively referred to as "the Brown intervenors"), challenging the district court's remedy order. Id. Specifically, the Brown intervenors "alleged that by increasing the size of the Commission from four to seven members in order to create a majority-black district, the district court `exceede[d] its authority granted by Congress in the Voting Rights Act, and violate[d] the Tenth and Eleventh Amendments.'" 225 F.3d at 1274. They did not challenge the remedy order insofar *Page 14 
as it abolished the system of "at-large election[s]." Id.
The district court dismissed the Brown intervenors' complaint, on the ground that it "failed to state a claim upon which relief can be granted." 225 F.3d at 1274-75. More specifically, it held that "[the Brown intervenors] failed to state a claim under the Tenth and Eleventh Amendments because the rights deprivation they alleged was the result of state rather than federal authority." Id. at 1275. The district court apparently reasoned "that because a federal court injunction [was] being implemented and imposed by a state body — here the Baldwin County Commission — the activity being challenged necessarily [became] state activity and state activity alone." Id. at 1281. It further concluded that the Brown intervenors had not alleged "that the 1988 injunction resulted in vote discrimination on account of race," and, on that basis, held that their Voting Rights Act claim was defective. 225 F.3d at 1275. The Brown Intervenors appealed.
The United States Court of Appeals for the Eleventh Circuit reversed the district court's judgment. That court held that the Brown intervenors had stated a claim, both under section 2 of the Voting Rights Act and under the Tenth and Eleventh Amendments. Regarding the Voting Rights Act claim, the court stated:
 "[U]nder the Supreme Court's holding in Holder [v. Hall, 512 U.S. 874 (1994)], `federal courts may not mandate as a [section 2] remedy that a state or political subdivision alter the size of its elected bodies.' [Nipper v. Smith, 39 F.3d 1494, 1532 (11th Cir. 1994).]. . . . By alleging that they are being subjected to, and their voting power is being affected by, an illegal election scheme that was plainly created because of or on account of race, the Intervenors have adequately stated a claim for a section 2 violation of the Voting Rights Act."
225 F.3d at 1281.
Regarding the Brown intervenors' claims under the Tenth and Eleventh Amendments, the court stated: "We cannot shield federal court orders from constitutional challenge simply because the federal court's orders are being implemented by local officials." 225 F.3d at 1282. It explained: "Activity performed pursuant to a federal court order is not transformed into the exclusive exercise of state power simply because it is performed by state actors who are obeying a federal court injunction." Id. at 1281.
However, the court declined to modify the 1988 injunction "to provide for four single-member districts rather than seven," as the Brown intervenors requested. 225 F.3d at 1282. Instead, it remanded the cause to consider whether changing the size of the Commission "might have been appropriate to remedy a violation of the Fourteenth Amendment." 225 F.3d at 1282.
After the Brown intervenors joined the litigation, Billy R. Smith, Joe M. Horace, and Willie E. Edwards (hereinafter collectively referred to as "the Smith intervenors") intervened to oppose the modification urged by the Brown intervenors. On April 11, 2001, following the remand of the cause, the Dillard plaintiffs and the Smith intervenors filed in the district court a "Motion for Determination of Partially Dispositive State Law Issue." The motion alleged that legislation enacted while the litigation was pending, coupled with a resolution passed by the Commission on August 17, 1999, had "caused the seven-member Baldwin County Commission to become fully constituted under Alabama law." *Page 15 
They alluded specifically to Act No. 92-1, § 1, 1992 Ala. Acts 3, codified at Ala. Code 1975, § 11-3-1.1(a), which provides: "Following the release of any federal decennial census, any county commission of this state which is at that time electing its members from single-member districts, pursuant to either state or local law or a court order, may, by resolution, alter the boundaries of the districts." They also referred to Resolution No. 99-76, passed by the Baldwin County Commission, which provides, in pertinent part:
 "WHEREAS, Title 11, Chapter 3, Article 1.1 of the Code of Alabama 1975 (`Code'), authorizes the County Commission to alter, revise and change the single-member County Commission district arrangement only after such alterations, revisions and changes have been provided by a display of a map delineating the proposed alterations . . . and
". . . .
 "WHEREAS, in compliance with the judgment and orders of the United States District Court for the Middle District of Alabama, Northern Division, Civil Action No. 87-T-1159-N, the County Commission hereby continues the implementation of the seven-member County Commission district arrangement; now therefore
 "BE IT RESOLVED BY THE COUNTY COMMISSION, IN REGULAR SESSION ASSEMBLED, . . . that we hereby alter, revise and change the seven single-member district arrangement for the County Commission of Baldwin County, Alabama. . . ."
The motion filed by the Dillard plaintiffs and the Smith intervenors stated: "The remand issue, regarding the remedial authority of [the district] court to set the number of seats on the Baldwin County Commission at seven, would be moot if the current seven-member structure is now authorized by state law." The Dillard plaintiffs and the Smith intervenors sought an order certifying to this Court questions regarding the effect of § 11-3-1.1, and Resolution No. 99-76. The Brown intervenors filed a response opposing the certification.
In an order entered May 8, 2001, the district court denied the motion, stating that "it would be far too much of a stretch to reach [the conclusion urged by the Dillard plaintiffs and the Smith intervenors]." However, on July 25, 2001, the Dillard plaintiffs and the Smith intervenors moved for reconsideration of the order denying their motion for certification, stating: "Events occurring since the May 8 order . . . warrant its reconsideration and make more compelling the need for clarification by the Supreme Court of Alabama of legislative intent expressed in Ala. Code § 11-3-1.1." In particular, they presented the affidavit of the "sole sponsor of Act 92-1," State Senator Henry ("Hank") Sanders, who expressed his view of the legislative "intent" of §11-3-1.1. In conjunction with the Sanders affidavit, they cited Siegelmanv. Alabama Association of School Boards, 819 So.2d 568 (Ala. 2001), for the proposition that this Court has "credited the representations of a committee of the Legislature regarding the legislative intent of Ala. Code [1975,] § 16-6B-9."
In response, the district court vacated its May 8, 2001, order, and certified to this Court the following questions:
 "A. Does Act 92-1, 1975 Ala. Code, § 11-3-1.1, provide state-law authority for county commissions by resolution to redraw the boundaries of their court-ordered single-member districts and, as a consequence, provide a state-law basis for the number of districts thus redrawn? *Page 16 
 "B. Did the Baldwin County Commission, by adopting Resolution #99-76, in fact adopt a seven-member commission pursuant to state law?"
Our consideration of these questions is guided by a number of well-established principles.[2] Foremost among these is the principle that Alabama counties are creatures of statute, and thus "can exercise only that authority conferred on [them] by [the Legislature]." JeffersonCounty v. Johnson, 333 So.2d 143, 145 (Ala. 1976); see also Laney v.Jefferson County, 249 Ala. 612, 32 So.2d 542 (1947); Askew v. HaleCounty, 54 Ala. 639 (1875). Corollarily, county commissions are "creatures of the Legislature," Arledge v. Chilton County, 237 Ala. 96,99, 185 So. 419, 421 (1938), having "no inherent powers." 4 Chester James Antieau, Antieau's Local Government Law: County Law § 32.03 (1989). Thus they "can exercise only such powers as are expressly given them by statute, or such as arise by necessary implication from the powers granted, or are indispensable to carry into effect the object and purpose of their creation." Id. (internal quotations omitted). See also Corningv. Patton, 236 Ala. 354, 356, 182 So. 39, 40 (1938).
Moreover, "enactments conferring power upon county governing boards will be strictly and narrowly construed. In case of reasonable doubt as to the existence of board power, courts will customarily resolve the doubt against the county board." 4 Antieau, supra, at § 32.03 (footnotes omitted; emphasis added). If county commissions "exceed the limits of their powers, their acts are void." Arledge, 237 Ala. at 99,185 So. at 421.
These principles allow us to condense the two certified questions intoone dispositive question, namely, whether there is statutory authority for the Commission to adopt a seven-member commission. If there is a substantive statutory source, the certified questions must be answered in the affirmative. If, on the other hand, the only substantive source for a seven-member commission in Baldwin County is the district court's order, then the questions must be answered in the negative. This must be so, because a statute that does no more than authorize the Commission to facilitate a federal court's order does not, itself, constitute substantive state law for the result.
To state the issue in this case is to resolve it, because the Dillard plaintiffs, the Smith intervenors, and the Commission concede that there is no local act providing for a seven-member commission in Baldwin County. Indeed, they argue that Act No. 239, 1931 Ala. Local Acts 100, which provided for a four-member commission, is "repugnant" to §11-3-1.1(a), and is, therefore, repealed by implication. They also concede the absence of any general act containing express authority for a seven-member commission. Specifically, they concede that § 11-3-1.1(a) contains no express authority for establishing a seven-member commission. They argue, however, that authority for a seven-member commission is necessarily implied in § 11-3-1.1(a). They contend that the provision authorizing counties to "`alter the boundaries of the districts' from which they have been elected `pursuant to either state or local law or a court order' necessarily implies the authority to adopt the number of districts specified by the court *Page 17 
order." Joint Brief of the Dillard plaintiffs and the Smith intervenors, at 9-10. "The law cannot be effective," they insist, "unless the authority to redraw the district boundaries includes the authority to adopt the number of districts being drawn." Id.
We disagree with this argument. While § 11-3-1.1(a) authorizes the alteration of district boundaries, it says nothing of any change in thenumber of districts. Section 11-3-1.1(a) is merely procedural, in that it authorizes the Commission to do what the Legislature did in enacting Act No. 239 and in the amendments of 1973 and 1975, that is, to set the metes and bounds of the commission districts. Consequently, the substantive authority for the seven districts established in Resolution No. 99-76 does not derive from § 11-3-1.1(a).
This conclusion is reinforced by reference to the preceding Code section, namely, Ala. Code 1975, § 11-3-1, which the Legislature amended in 1997, five years after it enacted § 11-3-1.1. See Act No. 97-640, 1997 Ala. Acts 1170. Subsection (a) of § 11-3-1 provides:
 "Unless otherwise provided by local law and as otherwise provided in subsection (b), there shall be in every county a county commission, composed of the judge of probate, who shall serve as chairman, and four commissioners, who shall be elected at the time prescribed by law and hold office for four years until their successors are elected and qualified."
(Emphasis added.) Section 11-3-1(a) as it read before the 1997 amendment also provided for four commissioners (in addition to the probate judge) in each county; and the Legislature did not change that provision. Considering § 11-3-1(a) in pari materia with § 11-3-1.1(a) clearly buttresses the conclusion that the Legislature did not intend to provide in § 11-3-1.1(a) general, substantive authority for county commissions in excess of four members (excluding the probate judge).
This conclusion is also consistent with the Legislature's response to another "Dillard-type" action. That response arose out of a permanent injunction entered in 1986 by the United States District Court for the Middle District of Alabama, increasing the number of county commissioners in Russell County from five to seven, and prohibiting the County "from conducting at-large elections" to fill the commission positions. Sumbryv. Russell County, 993 F. Supp. 1439, 1441 (M.D.Ala.), aff'd, 162 F.3d 99
(11th Cir. 1998). That commission structure was challenged in February 1997 by a plaintiff-intervenor, on grounds similar to those argued by the Brown intervenors in this case. Id. On March 12, 1997, the Russell County Commission petitioned the Legislature "to enact legislation that would statutorily fix the number of Russell County commissioners at seven,"id., the number set by the federal court.
In response, the Legislature passed Act No. 97-680, 1997 Ala. Acts 1329. 993 F. Supp. at 1442. Act No. 97-680 became effective May 29, 1997 — five years after the passage of § 11-3-1.1. That simple act contained only two substantive sections, which provided in toto:
 "Section 1. There is hereby created a county commission for Russell County, consisting of seven members, one to be elected from each of the seven districts apportioned by law. Each member shall be a resident of the district he or she is representing and shall hold office for a period of four years and until his or her successor is elected and qualified.
 "Section 2. The county commission and county commissioners shall have all the jurisdiction, duties, and powers which are now or may hereafter by law *Page 18 
be vested in the county commission or county commissioners by the state."
(Emphasis added.)
It must be conceded by all parties that if § 11-3-1.1(a) has the effect advocated by the Dillard plaintiffs, the Smith intervenors, and the Commission, the enactment of Act No. 97-680 represented at most an injudicious use of legislative resources. In other words, it seems unlikely that the Legislature would deem it necessary to pass a local act to do what had been accomplished by a general act five years earlier.
In short, the argument of the Dillard plaintiffs, the Smith intervenors, and the Commission — reduced to its essence — is merely a rehash of the rationale upon which the district court rejected the Brown intervenors' claims based on the Tenth and Eleventh Amendments, namely, that "[a]ctivity performed pursuant to a federal court order is . . . transformed into the exclusive exercise of state power simply because it is performed by state actors who are obeying a federal court injunction." Dillard, 225 F.3d at 1281. The United States Court of Appeals for the Eleventh Circuit soundly rejected that rationale, as do we.
Finally, Siegelman v. Alabama Association of School Boards, 819 So.2d 568
(Ala. 2001), does not, as Dillard and Smith argue, require us to consider the affidavit of Senator Sanders. To be sure, in that case, this Court considered the contentions of the Joint Fiscal Committee of the Alabama Legislature ("the Joint Committee"), as to the proper construction and effect of Ala. Code 1975, § 16-6B-9, and Ala. Code 1975, § 6-13-144(a). 819 So.2d at 576-77. However, the trial court had allowed the Joint Committee to intervene in that action, and the propriety of its intervention was not an issue on appeal. Once it became a party in the case, the Joint Committee's views of legislative intent were entitled to as much consideration as those of any other party — no more and no less. Obviously, that is not this case.
In summary, the Legislature has not provided for a seven-member, Baldwin County Commission, either by local act or by general law. Consequently, the sole authority for the number of districts set forth in Resolution No. 99-76 was the district court's order. For these reasons, we answer both certified questions in the negative.
QUESTIONS ANSWERED.
Moore, C.J., and Houston, See, Lyons, Johnstone, and Harwood, JJ., concur.
Brown, J., concurs in the result.
[1] The defendants in this case are the Baldwin County Commission, the seven commissioners in their official capacities, and Adrian Johns, in his official capacity as Baldwin County probate judge.
[2] The parties urging this Court to answer the questions in theaffirmative are the Dillard plaintiffs, the Smith intervenors, and the Commission. The parties arguing for negative answers are the Brown intervenors and Johns, in his official capacity as Baldwin County probate judge.