PER CURIAM.
On January 31, 2003, the Montgomery Circuit Court entered a judgment confirming the validity and legality of (1) $100 million in revenue warrants (“the warrants”) issued by the Board of Education of Montgomery County (“the Board”)[1] and (2) an ordinance (“the ordinance”) enacted by the Montgomery County Commission (“the Commission”) imposing a “Privilege License Tax Upon the Privilege of Engaging in Trades, Occupations and Professions in Montgomery County” (“the occupational tax”).
The Montgomery County district attorney (on behalf of the taxpayers and citizens of Montgomery County), intervenor taxpayers (the district attorney and the intervenor taxpayers are hereinafter referred to collectively as “the taxpayers”), and Elmore County filed six notices of *75 appeal. Upon motion of the parties, the six appeals were consolidated. We reverse and remand.

I. Facts

On August 19, 2002, the Board passed a resolution authorizing the sale and issuance of the warrants, and the Commission, by a vote of 3 to 2, enacted the ordinance, imposing a 1.5% tax on “Employee Compensation” and “Owner Compensation” (as those terms are defined in the ordinance) received by individuals who work in Montgomery County. Also on August 19, 2002, the Board filed this action seeking to have the warrants and the occupational tax validated in accordance with Ala.Code 1975, §§ 11-81-220 through 11-81-227 (included in Article 7 of Chapter 81, entitled “Validation of Bonds Prior to Issuance”). The proceeds of the occupational tax were pledged to the Board “for public school purposes, including, without limitation, the payment of the principal of, premium, if any, and interest on the Warrants.”
In accordance with § ll-81-222(b), the trial court issued an order requiring taxpayers and citizens of Montgomery County to show cause by September 13, 2002, as to why the warrants should not be validated and confirmed. A copy of the trial court’s order was published once a week for three consecutive weeks in the Montgomery Advertiser, a daily newspaper published in Montgomery County. A copy of the complaint and order was served on the district attorney of Montgomery County more than 18 days before the date set for the hearing on the complaint.
The district attorney answered the complaint, raising a number of legal defenses on behalf of taxpayers and citizens of Montgomery County. Numerous individual citizens, including citizens and taxpayers who reside outside Montgomery County, were permitted to intervene and to assert defenses. Of those entities that sought to intervene, only Elmore County and the Alabama State Employees Association were denied the right to intervene.[2] The trial court held a three-day hearing at which ore tenus evidence was presented; it then entered its final judgment.

II. Standard of Review

The trial court made 14 separate findings of fact, none of which is in dispute. This appeal concerns questions of law, including the interpretation of statutory provisions. Therefore, we review the issues presented by this appeal de novo, and the trial court’s decision carries no presumption of correctness. Ex parte Baron Servs., Inc., [Ms. 1011635, April 4, 2003] — So.2d - (Ala.2003). Additionally, we note that an ordinance enacted by a local governing body “is presumed reasonable and valid, and that the burden is on the one challenging the ordinance to clearly show its invalidity.” Jefferson County v. Richards, 805 So.2d 690, 706 (Ala.2001).[3]

*76
III. Analysis

A.

The taxpayers assert several arguments against the imposition of the occupational tax, including, among others, (1) that Ala. Code 1975, § 40-12-4(a), does not authorize the Commission to impose the occupational tax because the occupational tax is not a franchise, excise, or privilege-license tax and, as it applies to most taxpayers, is not levied with respect to “privileges or receipts from privileges”; (2) that § 40-12-4(b) prohibits the imposition of the occupational tax both because it is a tax “measured by gross proceeds” and because it is not “levied uniformly”; (3) that the occupational tax violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (4) that the occupational tax cannot be legally imposed on military personnel or lawyers. However, we need not address each of these arguments, because of our holding that the occupational tax violates § 40-12-4(b).
It is well established that “Alabama counties are creatures of statute, and thus ‘can exercise only that authority conferred on [them] by [the Legislature].' ” Dillard v. Baldwin County Comm’n, 833 So.2d 11, 16 (Ala.2002) (quoting Jefferson County v. Johnson, 333 So.2d 143, 145 (Ala.1976)). This principle is true with regard to all county powers, including the power of taxation. Lightwave Techs., LLC v. Escambia County, 804 So.2d 176, 180 (Ala.2001). By enacting Ala.Code 1975, § 40-12-4(a), the Legislature authorized counties to impose certain taxes for school purposes[4]:
“(a) In order to provide funds for public school purposes, the governing body of each of the several counties in this state is hereby authorized by ordinance to levy and provide for the assessment and collection of franchise, excise and privilege license taxes with respect to privileges or receipts from privileges exercised in such county, which shall be in addition to any and all other county taxes heretofore or hereafter authorized by law in such county.... All the proceeds from any tax levied pursuant to this section less the cost of collection thereof shall be used exclusively for public school purposes, including specifically and without limitation capital improvements and the payment of debt service on obligations issued therefor.”
(Emphasis added.)
However, the Legislature’s grant in § 40-12^4(a) of taxing authority is expressly limited by § 40-12-4(b):
“(b) Notwithstanding anything to the contrary herein, said governing body shall not levy any tax hereunder measured by gross receipts, except a sales or use tax which parallels, except for the rate of tax, that imposed by the state under this title.... No such governing body shall levy any tax upon the privilege of engaging in any business or profession unless such tax is levied uniformly and at the same rate against every person engaged in the pursuit of any business or profession within the county; except, that any tax levied hereunder upon the privilege of engaging in any business or profession may be measured by the number of employees of such business or the number of persons engaged in the pursuit of such profession.” [5]

*77
B.

By beginning with the phrase, “[n]ot-withstanding anything to the contrary herein,” § 40-12-4(b) expressly trumps any contrary language in § 40-12-4(a) because we interpret “herein” as referring to anything else in § 40-12-4. Hence, anything in § 40-12-4(b) that is inconsistent with the levy of an occupational tax supersedes any reference in § 40-12-4(a) that could be read as encompassing such a tax. Black’s Law Dictionary, 585 (7th ed.1999), defines an excise tax:
“A tax imposed on the manufacture, sale, or use of goods (such as cigarette tax), or on an occupation or activity... . — Also termed excise tax. ...”
Black’s Lato Dictionary, 1471, defines “occupation tax” as follows:
“An excise tax imposed for the privilege of carrying on a business, trade, or profession. ... Also termed occupational tax.’’
(Some emphasis in definitions added; some emphasis original.) The introductory language of § 40-12-4(b) must be read to eliminate this construction of an “occupation tax” as an “excise tax” if the balance of § 40-12-4(b) is inconsistent with the levy of an occupational tax.
Section 40-12-4(b) prohibits occupational taxes in two ways. First, § 40-12-4(b) begins with a prohibition of a tax measured by gross receipts except under circumstances not here relevant. When this statute was enacted, gross-receipts taxes were commonly understood to embrace an occupational tax. Estes v. Gadsden, 266 Ala. 166, 171-72, 94 So.2d 744, 748-49 (1957); McPheeter v. City of Auburn, 288 Ala. 286, 292, 259 So.2d 833, 837 (1972). Such circumstance aids us in determining the meaning of the reference to gross receipts in § 40-12-4(b). See Abbott Labs, v. Durrett, 746 So.2d 316, 339 (1999):
“In an effort to avoid indulging in conjecture or searching for imaginary purposes with respect to these ... statutes, we have followed the well-settled rule of statutory construction ‘that it is permissible in ascertaining [the purpose and intent of a statute] to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.’ In re Upshaw, 247 Ala. [221] at 223, 23 So.2d [861] at 863 [ (1945) ].”
In addition, a tax on an employer could be measured by gross receipts. Section 40-12 — 4(b) thus condemns taxes on gross receipts imposed on either the employee or the employer. Although the ordinance provides a deduction for the first $5,000 of income, counsel for the Board conceded at oral argument that that deduction could be reduced to $1 in the future and his argument in favor of the occupational tax would remain unchanged. It would exalt form over substance to deem the presence of a deduction sufficient to overturn the obvious legislative hostility to measuring tax liability by gross receipts. See McPheeter v. City of Auburn, 288 Ala. at 289, 259 So.2d at 837.
Second, § 40-12^(b) addresses the type of tax related to business income that is deemed appropriate in the context of a tax “upon the privilege of engaging in any business or profession” so long as that tax is “levied uniformly,” with one exception— the tax may be measured by the number of employees of the business or the number of persons engaged in the pursuit of the profession. In plain English, § 40-12-4(b) says: “Don’t tax anyone by gross receipts, and if you must tax a business or a profession, do so uniformly, but you can compute *78 the tax on businesses or professions on a per capita basis.” No reference is made in § 40-12-4(b) to trades or occupations. Employees are not engaged in the pursuit of a business or a profession in the context used in § 40-12-4(b); the context plainly speaks to taxing only employers. An ordinance taxing only those employers who are individuals and all employees impermissi-bly attempts to circumvent the prohibitions in § 40-12-4(b) against imposing taxes on employees by lumping all employees together.[6]

c.

Even if § 40-12-4(b) did not prohibit counties from levying occupational taxes, it is clear that the occupational tax levied by the Commission is not “levied uniformly” because it does not tax certain “person[s] engaged in the pursuit of ... business ... within the county.” Ala.Code 1975, § 40-12-4(b).
The term “person,” as that term is used in Title 40 of the Alabama Code, is defined in Ala.Code 1975, § 40-1-1; that section provides:
“For purposes of this title, and subject to additional definitions which are applicable to specific chapters or parts thereof, and unless the context otherwise requires, the following terms shall have the respective meanings ascribed by this section:
[[Image here]]
“(8) Person. Any individual, association, estate, trust, partnership, corporation, or other entity of any kind.”
(Emphasis added.) The Legislature’s use of the word “shall” makes it clear that under § 40-1-1 this Court is required to apply the definition of “person” found in § 40-1-1 to § 40 — 12—4(b) unless that meaning is superseded by other definitions specific to § 40-12-4(b) (there are none) or “unless the context otherwise requires.” See Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (“The word ‘shall’ is clear and unambiguous and is imperative and mandatory.”). In other words, there is no discretionary “middle ground”; we are required to apply the meanings in the definitions enumerated in § 40-1-1 unless required to apply a meaning that is otherwise made clear by context.
We cannot identify any context within § 40-12-4(b) that would permit (much less require) us to apply a different meaning to the term “person” than the one explicitly provided in § 40-1-1(8). The Board argues that the term “person” in § 40-12-4(b) should be read as excluding such entities as corporations because, it argues, in enacting other sections of Title 40 the Legislature appeared to recognize a distinction between the terms “person” and “corporation.” See Ala.Code 1975, § 40-12-2(a) (“Before any person, firm, or corporation shall engage in or carry on any business or do any act for which a license by law is *79 required....”); Ala.Code 1975, § 40-12-9(a) (“It shall be unlawful for any person, firm, or corporation to engage in or carry on any business-”); Ala.Code 1975, § 40-12-13 (“Where any person, firm, or corporation is engaged in more than one business.... ”); Ala.Code 1975, § 40-12-15(a) (“[Personal privilege to transact business] shall not be exercised except by the person, firm, or corporation licensed. ...”); Ala.Code 1975, § 40-12-18 (“Any person who acts as an agent for any person, firm, or corporation .... ”).
We find this argument unpersuasive for at least two reasons. First, the statutes cited by the Board were enacted separately from § 40-12-4(b), a fact which makes less viable any inference that the various sections of Title 40 can be read in pari materia to imply a legislative intent to redefine “person” as that term is used in § 40-12-4(b). Second, and most importantly, the Board’s argument itself makes clear that the Legislature knew how to separate the terms and, for whatever reason, chose not to do so in § 40-12-4(b). In this respect, its argument actually cuts against the Board. In any event, the Board’s argument certainly does not provide a context that would require a construction of the term “person” as used in § 40-12-4(b) other than the one provided by § 40-1-1(8).
Even if the occupational tax was a type of tax that the Commission could levy under § 40-12-4(a), to be valid the occupational tax would have to be “levied uniformly and at the same rate against every [‘individual, association, estate, trust, partnership, corporation, or other entity of any kind’] engaged in the pursuit of any business or profession within the county.” Ala.Code 1975, § 40-12-4(b); § 40-1-1(8).
As stated earlier, the ordinance describes the occupational tax as “A Privilege License Tax Upon The Privilege of Engaging in Trades, Occupations and Professions in Montgomery County.” Section l(r) of the ordinance defines the occupational tax as follows: “ ‘Tax’ shall mean the privilege license tax ... levied and assessed hereunder.” Section 2 of the ordinance imposes the tax upon “any Employee and any Owner who engages in or follows any Trade, Occupation or Profession,” including “both residents and nonresidents of the County.”[7] (Emphasis added.)
The ordinance defines an “Employee” as:
“[AJny individual who receives Employee Compensation.... [A]ny individual who holds any kind of office or position, either by election or appointment, as a federal, state, county, or city official, if such individual does any kind of work or renders any kind of services in the County.”
(Emphasis added.) It'defines “Employee Compensation” as:
“[A]ll cash or non-cash benefits which an Employee receives from or is entitled to receive from or be given credit for by an Employer for work done or services rendered in any Trade, Occupation or Profession in the County. Cash or non-cash benefits shall include all salaries, wages, commissions, bonuses, severance pay or other compensation of any kind or any *80 other consideration having monetary value....”
The ordinance defines an “Owner” as:
“[AJny individual who receives Owner Compensation. Owner shall include sole proprietors and other self-employed individuals ... to the extent such individual receives Owner Compensation.”
(Emphasis added.) It defines “Owner Compensation” as:
“[A]ll net earned income which an Owner receives from or is entitled to receive or be given credit for, in his capacity as Owner and not as an Employee, any work done or services rendered in any Trade, Occupation or Profession in the County....”
“Employees” and “Owners” are by definition “individuals” who receive employee compensation or owner compensation, and the occupational tax is imposed only upon that compensation. However, the occupational tax is not imposed upon the compensation of a corporation, an association, a partnership, etc. This fact is clear from the wording of the ordinance, and the Board has admitted as much.
Because the ordinance does not levy the occupational tax uniformly upon the privilege of every “individual, association, estate, trust, partnership, corporation, or other entity of any kind” that receives compensation for engaging in any business or profession, the Commission cannot levy the occupational tax under § 40-12-4. See Ala.Code 1975, § 40-1-1(8).
The trial court, in its judgment, ordered as follows:
“(h) The [occupational] ‘Tax’ can be and is levied uniformly and at the same rate against every person engaged in the pursuit of any business or profession within the County....”
In doing so, the trial court erred to reversal, unless, as the Board contends, Ala. Code 1975, § 40-12-31, which the Legislature enacted in 2001,[8] trumped the limitations upon the abilities of counties to impose franchise, excise, or privilege-license taxes. The trial court did not address § 40-12-31; however, this Court can affirm the judgment of a trial court for any reason, even for a reason not expressed by the trial court in its order. Southern Energy Homes, Inc. v. Gregor, 777 So.2d 79, 81 (Ala.2000)(“this Court can affirm the ruling of a trial court for any valid reason, even one not presented to or considered by the trial court”).
Section 40-12-31 provides:
“No provision or provisions in this chapter shall prevent the Alabama Legislature from enacting, imposing, and establishing occupational taxes, which are to be paid to the county or otherwise, and are imposed on an individual’s engaging in any occupation, business, or profession without any regard to whether he or she has a license to, or pays a license tax or fee in order to, carry on that occupation, business, or profession.”
In Ex parte Prudential Insurance Co. of America, 721 So.2d at 1138, this Court quoted Tuscaloosa County Commission v. Deputy Sheriffs’ Association of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991), for the following proposition:
“ ‘Words used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly ex *81 pressed intent of the Legislature must be given effect.’ ”
In essence, the Board argues that § 40-12-31 implicitly repeals the limitations found in § 40-12-4(b); we disagree. See Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 88 (Ala.2001) (“ ‘The implied repeal of a statute by another statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the Legislature intended to repeal the first statute.’ ” (quoting Anniston Urologic Assocs., P.C. v. Kline, 689 So.2d 54, 59 (Ala.1997))). Section 40-12-31 speaks to the power of the Alabama Legislature, not the power of counties. The plain, ordinary, and commonly understood meaning of the words of § 40-12-31 does not empower a county to enact an occupational tax, nor does it in any way remove the requirement of uniformity in § 40-12-4(b).

IV. Conclusion

We hold that the taxpayers have met their burden to “clearly show [the] invalidity” of the ordinance. Richards, 805 So.2d at 706. Therefore, we reverse the judgment of the trial court to the extent that it holds that the levy and collection of the occupational tax the ordinance purports to impose is legal and valid and complies with the laws of the State of Alabama.
1020755 — REVERSED AND REMANDED.
1020758 — APPEAL DISMISSED AS MOOT.
1020763 — REVERSED AND REMANDED.
1020764 — REVERSED AND REMANDED.
1020768 — REVERSED AND REMANDED.
1020773 — REVERSED AND REMANDED.
LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ„ concur.
SEE and JOHNSTONE, JJ, concur specially.
HOUSTON, J., concurs in part and concurs in the result.
MOORE, C.J., concurs in the result, (writing issued on July 16, 2003).

. Where used herein, the term "Board” shall include the Board of Education and its members.

. Elmore County appeals the denial of its motion to intervene; however, our decision precludes consideration of that issue.

. The taxpayers contend that because Ala. Code 1975, § 40-12-4, provides authority to tax, it must be interpreted most strictly against the taxing authority and in favor of all taxpayers. However, the rule regarding strict interpretation in favor of the taxpayer applies only when a "taxing statute” or ordinance is being interpreted. Section 40-12-4 is not a "taxing statute” in that it does not levy a tax; rather, § 40-12-4 merely authorizes counties to enact ordinances that levy taxes. See, e.g., City of Arab v. Cherokee Elec. Coop., 673 So.2d 751, 761 (Ala.1995) ("Taxing statutes must be construed most strictly against the taxing authority and most favorably for the taxpayer.”) (emphasis added); City of Birmingham v. Am-South Bank, N.A., 591 So.2d 473, 477 (Ala.1991) ("A basic rule of statutory construction is that ambiguous tax statutes [and ordinances] are construed against the taxing authority and in favor of the taxpayer.”) (emphasis added).

. It is undisputed that the funds generated by the occupational tax are to be used solely for public-school purposes.

. The language that is now found in § 40-12-4(b) was added during the 1969 Regular Session of the Legislature, approximately four months after the enactment of what is now *77 § 40-12-4(a) at the First Extraordinaiy Session of 1969 of the Legislature.

. Act No. 89, enacted at the Fourth Special Session of 1975 of the Legislature and effective November 13, 1975, provided that counties within a certain population bracket, which included Montgomery County, are “expressly prohibited from levying or collecting any additional occupational or gross proceeds tax, of whatever nature.” (Emphasis added.) The reference in § 2 of Act No. 89 to “additional occupational tax or gross proceeds tax” cannot be used as authority for recognizing an occupational tax under § 40-12-4(b) for two reasons. First, § 1 of Act No. 89 provides that the Act is subject to any limitation of any general law of this State. The limitation against an occupational tax in § 40-12-4(b), being a general law, cannot be overcome by Act No. 89. Second, the reference to "additional” is necessary to accommodate the prospect that the Act, applicable to counties within a specified population bracket, might have a field of operation in a county where an occupational tax might already or in the future exist by a local enabling act.

. Section 2 of the ordinance provides:
“It shall be unlawful for any individual to engage in or follow any Trade, Occupation, or Profession on or after the Tax Commencement Date, without paying the [occupational] Tax for the privilege of engaging in or following such Trade, Occupation, or Profession, which [occupational] Tax shall be measured by one and one-half percent (l!4%) of the Compensation of each such individual.”

. See Act No. 2001-383, Ala. Acts 2001.